Joseph A. PULEIO, Plaintiff, Appellant,

v.

George A. VOSE, Jr., etc., Defendant, Appellee.

No. 87-1135.

United States Court of Appeals, First Circuit.

Heard July 29, 1987.

Decided Oct. 9, 1987.

Thomas E. Kanwit, Boston, Mass., by Appointment of the Court, with whom James E. Carroll, Gaston Snow and Ely Bartlett, Boston, Mass., were on brief, for plaintiff, appellant.

Paula J. DeGiacomo, Asst. Atty. Gen., Acting Chief, Crim. Appellate Div., with whom James M. Shannon, Atty. Gen., and A. John Pappalardo, Chief, Crim. Bureau, Boston, Mass., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Appellant, Joseph A. Puleio, was convicted of first degree murder in a Massachusetts state court in March 1981. The judgment was affirmed by the Massachusetts Supreme Judicial Court (SJC). *See Commonwealth v. Puleio*, 394 Mass. 101, 474 N.E.2d 1078 (1985) (*Puleio I*). The appellant thereafter filed for habeas corpus in the United States District Court for the District of Massachusetts, alleging that his state conviction was thrice tainted by error of constitutional dimension: (1) the lack of a correct definition of "malice aforethought" in the jury instructions worked a denial of substantive due process; (2) the court so restricted the cross-examination of a prosecution witness that the protection of the confrontation clause, U.S. Const. Amend. VI, was stripped away; and (3) the improper admission of hearsay testimony likewise impeded the constitutional right to confrontation. The district court, adopting the report and recommendation of a United States magistrate, dismissed the habeas application on the merits, but granted a certificate of probable cause. This appeal followed.

The same triumvirate of points which were rebutted by the district court are presented for our scrutiny. We will deal with them separately. We will not, however, narrate the facts of the incident in any expository fashion. The evidentiary predicate for Puleio's murder conviction was well summarized by the SJC, *see id.* at 102, 474 N.E.2d 1078, and there would be little advantage in attempting federally to reinvent that particular wheel. Nonetheless, we will refer from time to time to particular facts developed during the trial as our consideration of the issues reasonably requires.

## I. THE CHARGE.

Puleio maintained before the SJC and in the district court that the charge to the jury failed to afford a proper definition of "malice aforethought", thereby abridging his fourteenth amendment right to due process of law. The Commonwealth's threshold response has been—and still is—that no contemporaneous objection was interposed at trial to the challenged segment of the jury instructions. Inasmuch as state law plainly requires such an objection, *see Commonwealth v. Fluker*, 377 Mass. 123, 131, 385 N.E.2d 256 (1979), the appellee argues that petitioner is barred from raising the supposed defect in a federal habeas proceeding. *See Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). The district court agreed, and so do we.

Under the now familiar *Wainwright* doctrine, a defendant's failure to object at his original state trial may constitute an "independent and adequate state procedural ground" sufficient to foreclose collateral federal review of claimed constitutional error, *id.* at 87, 97 S.Ct. at 2506, so long as the state has a contemporaneous objection rule and has not waived its enforcement. *McCown v. Callahan*, 726 F.2d 1, 3 (1st Cir.), *cert. denied*, 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 78 (1984). To escape from the preclusory effect of such a procedural default, the defendant is obliged to show both "cause" for, and "prejudice" from, his noncompliance with the rule. *Id.*

In the case at bar, Puleio concedes that Massachusetts employs a contemporaneous objection rule and that his trial counsel did not register a timely protest to the malice instruction. Notwithstanding, appellant

contends that the Commonwealth waived enforcement of the rule, and that, in any event, he has shown sufficient cause and prejudice to clear the *Wainwright* hurdle. Having scoured the record with meticulous care, we find that these contentions wither and die in the bright glare of controlling precedent.

A. *Waiver.* Petitioner's waiver argument reduces to the forlorn claim that the SJC jettisoned the procedural default (as a prospective bar to federal habeas review) when it considered and passed upon the merits of Puleio's assignment of instructional error. To be sure, the SJC did examine the substance of this asseveration, concluding that although the malice instruction was erroneous, "it was harmless to the defendant beyond a reasonable doubt." *Puleio I,* 394 Mass. at 107, 474 N.E.2d 1078. But, it is not enough for Puleio's present purpose that some oblique consideration was given to the merits of his claim. Not every passing reference to substance dispels the onus of noncompliance with a contemporaneous objection rule. Waiver in such circumstances must entail the state court reaching the gist of the *federal constitution question.* The test "is the extent to which the state court relies upon federal rights, cases and legal principles in conducting its review.... The greater the reliance on federal doctrine, the more likely we are to find waiver." *Jackson v. Amaral,* 729 F.2d 41, 45 (1st Cir.1984). Such reliance is notably absent in this instance.

Massachusetts law provides that the SJC may reach the merits of an appeal, notwithstanding procedural default, to determine whether a miscarriage of justice likely occurred. *See* M.G.L. ch. 278, § 33E (special standard of review in capital cases); *Commonwealth v. Tavares,* 385 Mass. 140, 148, 430 N.E.2d 1198, *cert. denied,* 457 U.S. 1137, 102 S.Ct. 2967, 73 L.Ed.2d 1356 (1982); *Commonwealth v. Perry,* 385 Mass. 639, 647, 433 N.E.2d 446 (1982); *Commonwealth v. Roberts,* 378 Mass. 116, 123, 389 N.E.2d 989 (1979). It is altogether evident that the SJC's consideration of the alleged instructional error in

Puleio's case "went not to the *federal* question of ... constitutional sufficiency, but to the *state* law question of whether a 'substantial risk of a miscarriage of justice' was present." *Gibson v. Butterworth,* 693 F.2d 16, 17 (1st Cir.1982) (emphasis in original). The SJC itself was careful to point out that the neglect seasonably to press an objection to this aspect of the charge prevented analysis of petitioner's claim under any but the state law miscarriage of justice standard:

> [A]s the colloquy between the judge and counsel following the main part of the charge shows, the defendant ... did not object to the instructions on malice. Rather, defense counsel joined the prosecutor in focusing on deliberate premeditation. Because defense counsel did not suggest to the judge any dissatisfaction with the judge's further jury instructions, to obtain a reversal of the conviction on the ground that the jury charge was inadequate, the defendant must demonstrate that the error created a substantial likelihood of a miscarriage of justice. G.L. c. 278, § 33E.

*Puleio I,* 394 Mass. at 109, 474 N.E.2d 1078. Against this backdrop, it is disingenuous to argue that the SJC's "harmless ... beyond a reasonable doubt" finding was intended to incorporate the federal harmless error standard, *see Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963); *United States v. Argentine,* 814 F.2d 783, 789 (1st Cir. 1987), into its review. We have repeatedly held, and today reaffirm, that SJC review under the discretionary state miscarriage of justice standard will not suffice, in and of itself, to bypass the Commonwealth's contemporaneous objection rule. *See McCown,* 726 F.2d at 3; *Gibson,* 693 F.2d at 17. A clearer showing of waiver is manifestly necessary.

There is a second reason, too, why the white flag of waiver will not fly from these ramparts. It is crystal clear that the SJC rested its "miscarriage" decision exclusively on state law anent the malice afore-

thought point. Here as in *McCown,* 726 F.2d at 4, there was "no indication that the court researched, examined in depth, or intended to rely upon, federal law in the area." Indeed, the SJC's discussion of the malice instruction contained not a single reference to any federal case or statute. *See Puleio I,* 394 Mass. at 105–09, 474 N.E.2d 1078.[1] Accordingly, we are constrained to conclude that the SJC's ascertainment of the benignity of the error "should be read to mean only that, as a matter of *state* law, the case did not pose a substantial risk of a miscarriage of justice." *Gibson,* 693 F.2d at 18 (emphasis in original).

■ Before leaving the question of waiver, we must address yet another shot from the petitioner's sling: Puleio's exhortation that the federal district court waived the procedural default by reaching the merits of his constitutional claim. Novel though this bombardment may be, it is easily deflected. As we have already noted, the district court—far from pardoning Puleio's procedural default—expressly relied on it as a primary basis for dismissing the habeas application. More importantly, principles of federalism and comity augur that only a *state* tribunal may waive such a procedural default so as to permit substantive collateral review in federal habeas jurisdiction. After all, the very purpose of the *Wainwright* limitation is "to accord appropriate respect to the sovereignty of the States in our federal system.... [If the state courts do not] indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the state by entertaining the claim." *Ulster County Court v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). If federal

courts were free at whim to overlook state procedural defaults, the *Wainwright* rule would lose all vitality. We will not countenance such a casual disparagement of state sovereignty. It follows that the district court, which did not purport to waive the procedural default, could not have done so in any event. Thus, the appellant's parting shot falls well wide of the mark.

For all of these reasons, there was no waiver.

**B. *Cause and Prejudice.*** The Massachusetts contemporaneous objection rule being alive and well in this case, we turn next to petitioner's contention that he has satisfied the obligation of showing cause and prejudice relative to noncompliance with that rule.

■ Puleio's initial sally—that counsel's failure contemporaneously to object resulted from inadvertence rather than a deliberate tactical decision, and that the Commonwealth should therefore be required to "justify" federal abstention—need not occupy us for long. The Court addressed this question squarely in *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), holding that attorney error (not sinking to the level of ineffective assistance of counsel) cannot constitute "cause" within the *Wainwright* purview. *Id.* 106 S.Ct. at 2645–46. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* 106 S.Ct. at 2646.[2]

■ Perhaps recognizing that *Murray* slams the door on his inadvertence sortie, Puleio next argues that trial counsel's

---

1. Appellant points out, correctly, that the SJC at one juncture cited *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1978). *See Puleio I,* 394 Mass. at 109–10, 474 N.E.2d 1078. Yet, this lone reference to federal authority occurred in the context of an analysis not of the malice instruction, but of the trial judge's transferred intent instruction. The citation, therefore, bears no relevance to the question presented for our consideration.

2. The petitioner concedes that he has not exhausted his ineffective assistance claim. In point of fact, he amended his petition below to delete this claim and belatedly asked the district court to stay proceedings herein whilst he returned to state court to exhaust it. The district court, in an entirely permissible exercise of its discretion, *cf. Lefkowitz v. Fair,* 816 F.2d 17, 22–23 (1st Cir.1987), refused to grant the stay. Thus, the *per se* claim of ineffective assistance is not before us.

"hearing difficulty" represents an "objective external factor" which impeded compliance with the contemporaneous objection rule to an extent sufficient to constitute cognizable cause. Yet, like his late-blooming claim of ineffective assistance of counsel itself, this contention was never raised in the state courts. As *Murray* teaches, the exhaustion doctrine requires that such initiatives be presented to the state courts on an independent basis before they may be used as building blocks to erect a palladium of cause sufficient to shelter an habeas applicant from the rigors of his procedural default. *Murray*, 106 S.Ct. at 2646. "[I]f a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available." *Id.* The same holds true of the trial lawyer's supposed hearing impairment. For purposes of the exhaustion requirement, counsel's *disability* and counsel's *inability* are functionally equivalent.

To slide one last deadbolt across an already-shut portal, we must note that Puleio eschewed the hearing impairment argument in district court, presenting it for the first time on appeal. Under well settled principles, we need not—indeed, should not—consider matters which were not raised below. *United States v. Figueroa*, 818 F.2d 1020, 1025 (1st Cir.1987). And, we will not do so in this case.

Puleio has wholly failed to show adequate cause for his neglect to fulfill the requirements of the Commonwealth's contemporaneous objection rule. Because under *Wainwright*, 433 U.S. at 86–87, 97 S.Ct. at 2506–07, the twin requirements of cause and prejudice are conjunctive, the absence of any demonstration of the former renders inquiry into the latter unnecessary. The trial court's charge cannot successfully be challenged in this proceeding.

## II. SUBATCH'S TESTIMONY.

At trial, petitioner sought to impeach the testimony of Wayne Subatch, a key prosecution witness, by reference to Subatch's criminal record. A state statute, M.G.L. ch. 233, § 21, provided that to impeach a witness in this fashion, the conviction must be proved by a court record or a certified copy. *See Commonwealth v. Atkins*, 386 Mass. 593, 600, 436 N.E.2d 1203 (1982). In the absence of such proof, the Commonwealth declined to agree to the introduction of prior convictions through an (unofficial) probation department form known as a "blue sheet." The trial judge ordered that Subatch be examined out of the presence of the jury to determine whether he had been convicted of the crimes limned in the blue sheet, and if so, whether he had been represented by counsel during the predicate legal proceedings. Subatch acknowledged during this voir dire that he was the person who had been convicted of a number of the offenses, and testified further that he had been represented by counsel in connection with some (though not all) of those convictions.

In toto, four convictions were involved: one for assault with a dangerous weapon (1976), one for assault and battery of a police officer (1977), one for disorderly conduct (1977), and one for larceny (1979). Although the record is less than explicit on this point, it appears that after the voir dire the trial judge was willing to allow cross-examination regarding the first three of these convictions, notwithstanding the defense's failure to comply with M.G.L. ch. 233, § 21. Puleio's counsel did, in fact, cross-question Subatch about his two 1977 convictions. For reasons not readily apparent on the face of the record, he made no effort to impeach Subatch with the 1976 conviction. Although the petitioner argues that the state court precluded him from cross-examining the witness about that episode, the record simply fails to bear out this assertion.[3] Hence, the only bit of im-

---

**3.** The record, fairly read, indicates that the trial court did not, during voir dire, unequivocally rule out the defendant's use of the 1976 episode.

Yet, when the jury was recalled, Puleio's counsel never attempted to employ that conviction for impeachment purposes. By failing to do so, he

peachment evidence which can be said to have been excluded by the court was the 1979 larceny conviction.

██ Appellant trumpets that this restriction on cross-examination denied him his constitutional rights to confrontation and due process. *See* U.S. Const.Amend. VI, XIV.[4] Though loudly proclaimed, the call signifies nothing of any substance. Defense counsel took full advantage of the opportunity to conduct a lengthy, penetrating cross-examination of Subatch, during which the jury heard evidence that the witness had been found guilty of disorderly conduct and an assault upon a peace officer. He could have—but did not—grill Subatch about his conviction for assault with a dangerous weapon. There is no rational basis, under the circumstances, for regarding the limitation against use of a lone larceny conviction (of questionable relevance, we might add) as a violation of Puleio's constitutional rights.

██ We need not probe the point too deeply, however, for it is perfectly plain that any restriction on the right of cross-examination was of petitioner's own making. Puleio had ample notice that Subatch would testify for the prosecution, and the Massachusetts rule mandating that impeachment evidence of prior criminal convictions be by court records or certified copies thereof is of long standing. *E.g., Commonwealth v. Walsh,* 196 Mass. 369, 369–70, 82 N.E. 19 (1907). Having frittered away a period of no less than several months within which he could have procured the requisite documentation but did not, petitioner cannot meaningfully be heard to insist that this was the cornerstone of his defense.

██ The law ministers to the vigilant not to those who sleep upon perceptible rights. Like any litigant, a criminal defendant cannot routinely be rewarded for somnolence and lassitude. Once these verities are acknowledged, it becomes readily apparent that the trial court denied the defendant no right which he had not already sacrificed on his own. No error of constitutional magnitude attended the enforcement of M.G.L. ch. 233, § 21 in the circumstances of this case.[5]

## III. THE EXCITED UTTERANCE.

Jacqueline LaMothe, the barkeep at the tavern where the homicide took place, testified about her recollection of the evening's events. According to the SJC's summary of the facts—a summary which we have found, on perscrutation of the full record, to be essentially accurate—LaMothe indicated that, while she was attending to patrons in the pub,

She heard a shot and then a scream, and that then someone ran into the bar and told her to telephone for an ambulance. She testified that after making the telephone call she went outside and "asked who had shot the gun once, and nobody answered me." Over the defendant's objection, LaMothe testified that Bonnie Eaton then "yelled out" a response to her inquiry. The defendant again objected [citing the rule against hearsay]. The prosecutor indicated that she relied on the "spontaneous utterance" exception to that rule. *See Commonwealth v. Hampton,* 351 Mass. 447 [221 N.E.2d 766] (1966). The judge allowed the prosecutor to ask LaMothe, "What did Bon-

---

forfeited any claim of substantial error. *See United States v. Griffin,* 818 F.2d 97, 102–06 (1st Cir.1987).

**4.** The sixth amendment, of course, is made mandatory upon the states through the fourteenth amendment. *See Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965).

**5.** Puleio did not challenge the reasonableness of M.G.L. ch. 233, § 21 in the state courts, and is thus foreclosed from doing so here. Even were the situation otherwise, the statute—which is designed to (i) conserve time and avoid confu-

sion of issues through unnecessary questioning on collateral matters, and (ii) ensure the accuracy of especially sensitive impeachment evidence—seems likely to pass muster as a reasonable procedural/evidentiary stricture. The SJC has held, correctly we think, that requiring compliance with M.G.L. ch. 233, § 21 as a precondition to questioning a witness about prior criminal convictions does not compromise the fundamental rights of cross-examination or fair trial. *See Commonwealth v. Clifford,* 374 Mass. 293, 305, 372 N.E.2d 1267 (1978).

nie Eaton say?" LaMothe responded, "Joe Puleio."

*Puleio I,* 394 Mass. at 104, 474 N.E.2d 1078.

Appellant urges that LaMothe's account did not qualify for admission into evidence under the excited utterance exception to the hearsay rule. Even if it did, he says, it was error to admit the narrative because its probative value was substantially overbalanced by its prejudicial effect. *Cf.* Fed. R.Evid. 403. And, petitioner builds to the ultimate crescendo: that admission of this highly incriminating hearsay was in blatant derogation of the federal Constitution's confrontation clause.

■ The first two of these forays are easily turned aside. Habeas review does not ordinarily extend to state court rulings on the admissibility of evidence. *Burgett v. Texas,* 389 U.S. 109, 113–14, 88 S.Ct. 258, 260–61, 19 L.Ed.2d 319 (1967); *Lisenba v. California,* 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941). The federal judiciary holds no roving commission to monitor case-by-case compliance with rules of evidence in the trial courts of the several states. Thus, our role is not to determine whether LaMothe's testimony was admissible under the state's evidentiary precedents. In that regard, we are "bound by the Massachusetts court's interpretation of [its] evidentiary law...." *McLaughlin v. Vinzant,* 522 F.2d 448, 450 (1st Cir.), *cert. denied,* 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975). *See also Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050, 1057 (6th Cir.1983) (the issue on federal habeas review is not "whether the statements are admissible under the state evidentiary rules"), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984); *Olson v. Green,* 668 F.2d 421, 428 n. 12 (8th Cir.1982) ("state court's interpretation of its own rules of evidence is binding" upon federal court). *Cf. Salemme v. Ristaino,* 587 F.2d 81, 87 (1st Cir.1978) (interpretation of state statute by state's highest tribunal binds federal court). In habeas jurisdiction, we review state convictions solely for error of constitutional stature. *See* 28 U.S.C. § 2254(a). Accordingly, Puleio's contention that, under Massachusetts's code of evidence, the spontaneous utterance exception was inapposite does not comprise proper grist for the federal habeas mill. The same holds true of his lamentation that the evidence should have been excluded under state law because its prejudicial impact outweighed its probative value.

The last furculum of the petitioner's challenge is not so facilely to be dismissed. It is altogether fitting that we assay his assertion that the state evidentiary ruling—the application of the spontaneous utterance exception to the hearsay rule in the circumstances of his case—deprived him of his sixth amendment right to confrontation. *See Olson v. Green,* 668 F.2d at 428 n. 12 (question of "whether the statements at issue fall within a 'firmly rooted' hearsay exception implicates matters of constitutional magnitude under the confrontation clause," cognizable in federal court on habeas review).

We start with the settled notion that the confrontation clause does not preclude admission of all out-of-court statements. *United States v. Bourjaily,* —— U.S. ——, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987); *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980); *Mattox v. United States,* 156 U.S. 237, 242–44, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895). If woodenly construed, the right of the accused "to be confronted with the witnesses against him" would foreclose the use of virtually all declarant-absent hearsay, no matter how reliable. *See Bourjaily,* 107 S.Ct. at 2782 ("literal interpretation of the Confrontation Clause could bar the use of any out-of-court statements when the declarant is unavailable"). The Court has rejected that view as "unintended and too extreme." *Roberts,* 448 U.S. at 63, 100 S.Ct. at 2537. By the same token, however, the Court has made it clear that the sixth amendment does more than merely codify the common law hearsay rule and its myriad exceptions. *Id.* at 63–64, 100 S.Ct. at 2537–38. *See also California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970); *United States v.*

*Iron Shell,* 633 F.2d 77, 87 n. 13 (8th Cir. 1980). Reconciliation of hearsay principles with the confrontation clause, therefore, calls on a reviewing court to weigh the interests served by each, with particular attention to the core concern that any admitted hearsay must fall within an exception to the hearsay rule "firmly enough rooted in our jurisprudence" to satisfy the strong underlying interest in an accurate and reliable factfinding process. *Bourjaily,* 107 S.Ct. at 2783. Since such exceptions, once established, fall "outside the compass of the general hearsay exclusion," *id.,* the use of this type of evidence will not run afoul of the confrontation clause.

The nature of our inquiry in this regard has recently been clarified. In *Roberts,* the Court articulated an accommodation between the competing concerns which, on the one hand, allow for the admission of some (better credentialed) hearsay and those which, on the second hand, guarantee a criminal defendant the right to face his accusers. The Court concluded:

> [C]ertain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' ...
> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.

448 U.S. at 66, 100 S.Ct. at 2539. Since *Roberts* was announced, federal appellate courts have marched in near-perfect unison to the *Roberts* tune. *See United States v. Moore,* 791 F.2d 566, 574 (7th Cir.1986); *United States v. Massa,* 740 F.2d 629, 638–40 (8th Cir.1984); *United States v. Ordonez,* 722 F.2d 530, 535–36 (9th Cir.1983); *United States v. Katsougrakis,* 715 F.2d 769, 776 (2d Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984); *Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d at 1056–57; *United States v. Washington,* 688 F.2d 953, 959 (5th Cir.1982).

In *Bourjaily,* the Court, while retaining the score of *Roberts,* has lately rearranged the melody. Noting that its previous decisions had the effect of establishing only "a general approach to the problem [of reconciling hearsay exceptions with the confrontation clause]," *Roberts,* 448 U.S. at 65, 100 S.Ct. at 2538, the *Bourjaily* Court decreed that, with reference to out-of-court declarations of unavailable coconspirators, "the Confrontation Clause does not require a court to embark on an independent inquiry into the reliability of [such] statements...." *Bourjaily,* 107 S.Ct. at 2783. Accordingly, to the extent that a traditional hearsay exception has sufficiently long and sturdy roots, a determination that the exception applies obviates the need for a separate assessment of the indicia of reliability which may or may not attend the evidence.

In this case, Bonnie Eaton did not testify. She was concededly unavailable during trial. Thus, the constitutionality of admitting LaMothe's testimony turns on whether the basis for its admission grew out of a "firmly rooted hearsay exception" within the ambit of the *Bourjaily/Roberts* rule. The Supreme Court itself has had occasion to identify only a few hearsay exceptions which satisfy this criterion: *e.g.,* coconspirator statements, *see Bourjaily,* 107 S.Ct. at 2782–83; business records, *see Roberts,* 448 U.S. at 66 n. 8, 100 S.Ct. at 2539 n. 8; cross-examined prior trial testimony, *see Mancusi v. Stubbs,* 408 U.S. 204, 213–16, 92 S.Ct. 2308, 2313–15, 33 L.Ed.2d 293 (1972); and dying declarations, *see Pointer v. Texas,* 380 U.S. at 407, 85 S.Ct. at 1069. The Court has not spoken to whether the excited utterance exception measures up to the *Bourjaily/Roberts* benchmark. Nor have we. Today, we resolve that inquiry for ourselves in the affirmative. Indeed, we regard this question and answer as having been foreshadowed by our pre-*Roberts* decision in *McLaughlin v. Vinzant,* 522 F.2d 448 (1st Cir.), *cert.*

*denied,* 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975).

In *McLaughlin,* appellant sought habeas relief on the ground that the admission of testimony as to an incriminating out-of-court statement attributed to a codefendant abridged the right to confrontation. The witness in McLaughlin's case testified that the defendant's companion, Dellamano, had rushed through the door immediately after the shooting, exclaiming that McLaughlin shot someone. The testimony was allowed despite the fact that Dellamano did not take the stand and was thus unavailable for cross-examination.[6] In rejecting appellant's sixth amendment challenge, we acknowledged that while the protections of the confrontation clause are not necessarily coextensive with hearsay principles, 522 F.2d at 451 n. 1, "the spontaneous exclamation exception to the hearsay rule is one of long standing ..." *Id.* at 450. Accordingly, we affirmed the district court's denial of the writ, finding that "neither [the excited utterance] exception in general nor its application permitting the admission of testimony as to [declarant]'s utterance contravenes the policy embodied in the confrontation clause." *Id.* at 450–51.

As adumbrated by *McLaughlin,* we hold that spontaneous utterances comprise a firmly rooted hearsay exception under *Bourjaily,* 107 S.Ct. at 2782–83, and *Roberts,* 448 U.S. at 65–66, 100 S.Ct. at 2538–39. To borrow a phrase succinctly employed in the Court's most recent refinement of the principle, the special evidentiary treatment accorded to spontaneous exclamations is, we think, "steeped in our jurisprudence." *Bourjaily,* 107 S.Ct. at 2783. In so ruling, we take note of the long and storied lineage of the exception. It was acknowledged in England, at common law. *E.g., Aveson v. Kinnaird,* 102 Eng.Rep. 1258 (1805); *Thompson v. Trevanion,* 90 Eng.Rep. 179 (1693). Examples of the genre are to be found in cases from many American jurisdictions, dating back to the nineteenth century. *E.g., Insurance Co. v. Mosley,* 75 U.S. (8 Wall.) 397, 407–08,

19 L.Ed. 437 (1869); *Travelers' Ins. Co. v. Sheppard,* 85 Ga. 751, 775, 12 S.E. 18 (1890); *Dismukes v. State,* 83 Ala. 287, 289, 3 So. 671 (1887); *State v. Wagner,* 61 Me. 178, 195 (1873). As Professor Wigmore has written:

The limits of the Exception may be elusive and the practice in different courts may vary. But that the core and substance of such an Exception is universally accepted cannot be open to doubt.

Historically, this conscious recognition appears in England before the end of the 1700s ... though it is only within the last few generations that it is firmly and unquestionably established. Such is, however, the inherent congruity of the doctrine that we are still able to resort to the earliest precedent for a succinct and accurate statement of the principle.

6 J. Wigmore, *Evidence* § 1080 at 137 (3d ed. 1940). In our view, it is indisputable that use of such spontaneous exclamations falls within one of the most deeply embedded of hearsay exceptions.

We are quick to remark that we are not alone in our view of the relationship between excited utterance hearsay and the confrontation clause. Those federal courts which have passed on the issue to date, insofar as we can determine, have uniformly reached a similar conclusion. *See United States v. Moore,* 791 F.2d at 574 ("The excited utterance exception is a firmly rooted hearsay exception."); *Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d at 1057 (generally, "statements falling within the excited utterance exception do not contravene the policies of the confrontation clause"). *See also United States v. Cree,* 778 F.2d 474, 501–02 (8th Cir.1985) (Oliver, J., dissenting) (distinguishing excited utterances from evidence admitted under residual hearsay exception, Fed.R.Evid. 803(24)).

Thus, we rule that excited utterance testimony, generally, meets the *Bourjaily/Roberts* criterion. Yet, that does not complete our task. Notwithstanding that

---

**6.** As in the case at bar, McLaughlin "was able to effectively exercise his right of confrontation on the factual question of whether the [witness] had actually heard her make the statement inculpating him in the crime." 522 F.2d at 450.

*Bourjaily,* 107 S.Ct. at 2783, relieves us of the duty to inquire exhaustively into the presence of indicia of reliability once we find that a firmly rooted hearsay exception is in play, *see ante* at 20, we stop short of holding that a federal court, in habeas jurisdiction, need make *no* inquiry whatever into the dependability of excited utterance testimony. Plainly, the mere fact that a state court, in admitting evidence, tucks it into a pigeonhole which bears the label of a time-honored hearsay exception cannot be entirely dispositive. Our habeas powers are not so blunted that we pay obeisance to the symbols of justice at the expense of substance. Thus, the state court record must show a sufficient factual predicate rationally to support the affixation of the label. *Cf. Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (evidence sufficient to support conviction so long as, after viewing it in the light most favorable to prosecution, "any *rational* trier of fact could have found the essential elements of a crime beyond a reasonable doubt") (emphasis in original). But, once this is done—once the Commonwealth points to proof adequate to "show by a preponderance of the evidence that the ... statement falls within a recognized exception to the hearsay rule...." *United States v. Katsougrakis,* 715 F.2d at 775— the federal inquiry has been answered.

■ This standard has been met in the case at bar. There was ample evidence before the trial court to allow the admission of Eaton's statement, through La-Mothe, under the excited utterance exception to the hearsay rule. Although Puleio has directed us to some evidence that Eaton might not have observed the murder (*e.g.,* conflicting testimony as to Eaton's precise location), the overall record positions her as a likely onlooker. *See Puleio I,* 394 Mass. at 105, 474 N.E.2d 1078. The other desiderata urged upon us by the appellant, such as the fact that all of the witnesses (including Eaton) had been drinking heavily, go properly to the weight of LaMothe's testimony rather than to the constitutionality of its introduction into evidence. Likewise, appellant's speculation that Eaton may have harbored some animosity against him furnishes no basis either for excluding her (otherwise admissible) statement or for finding its admission anathematic to the imperatives of the confrontation clause. *See United States v. Moore,* 791 F.2d at 573. Permitting the jury to hear the testimony worked no intrusion upon Puleio's sixth amendment rights. As in *McLaughlin,* "[t]he remark followed hard upon an event—a shooting—likely to produce the utmost in excitement and shock and to ensure the utterance's spontaneity and, presumably, its truthfulness." 522 F.2d at 450. Since we have held, *ante,* that testimony supportably admitted into evidence on this basis falls within a firmly rooted hearsay exception, the confrontation clause has not been sullied.

## IV. CONCLUSION.

In sum, the petitioner has failed to show that any cognizable error of constitutional dimension adversely affected his defense of the Commonwealth's case against him. We find his claim of instructional error to have been procedurally defaulted. The Commonwealth has not waived the default, nor has Puleio yet demonstrated cause (in the *Wainwright* sense) sufficient to allow us to overlook it. We rule, as well, that the petitioner's rights under the sixth amendment were not violated either by any limitations imposed on the cross-examination of the witness Subatch or by La-Mothe's testimony recounting the sum and substance of Eaton's spontaneous exclamation.

For the reasons which we have articulated, the district court did not err when it denied and dismissed the application for habeas relief or when it rejected Puleio's motion to stay.[7] It follows, therefore, that the district court's judgment must be

*Affirmed.*

---

7. *See supra* n. 2.