**Oscar N. BURKS, Jr., Petitioner, Appellant,**

v.

**Larry E. DUBOIS, Respondent, Appellee.**

**No. 94–2197.**

United States Court of Appeals, First Circuit.

Heard May 1, 1995.

Decided June 8, 1995.

---

Neil F. Colleran, Lexington, MA, for appellant.

Gregory I. Massing, Asst. Atty. Gen., with whom Scott Harshbarger, Atty. Gen., Boston, MA, was on brief, for appellee.

Before SELYA, CYR and BOUDIN, Circuit Judges.

SELYA, Circuit Judge.

Petitioner-appellant, Oscar N. Burks, Jr., asked the federal district court to invoke its habeas corpus powers, 28 U.S.C. §§ 2241– 2254 (1988), and set aside his state conviction on charges of trafficking in cocaine, exploiting a minor for illegal drug-related purposes, and illicitly conveying articles to a state penal institution. *See* Mass.Gen.L. ch. 94C, § 32E, 32K (1989); Mass.Gen.L. ch. 268, § 31 (1989). The district court declined to issue the writ. Petitioner appeals. We affirm.

## I

### *Background*

The stage can be set for consideration of this single-issue appeal without lengthy elaboration. In doing so, we take the facts in the conventional manner prescribed by the jurisprudence of habeas corpus. *See* 28 U.S.C. § 2254(d) (stipulating presumption of correctness that attaches to state court findings of fact in federal habeas proceedings); *see also Miller v. Fenton*, 474 U.S. 104, 112–15, 106 S.Ct. 445, 450–52, 88 L.Ed.2d 405 (1985).

Petitioner, a correctional officer at a state penitentiary in Gardner, Massachusetts, agreed to facilitate an inmate's scheme to smuggle contraband into the prison. The plan called for petitioner to pick up an ounce of cocaine at a predetermined spot outside the institution and deliver it to the inmate in return for a $200 fee plus a jot of cocaine. Petitioner did not know that his newfound crony was fronting for the state police.

After one unsuccessful attempt, the inmate told petitioner that the drugs and the money would be deposited in a residential mailbox in Worcester. On August 15, 1991, petitioner sojourned to that city, located the house (which, unbeknownst to him, was under intensive police surveillance), and drove by it several times. He then visited a nearby doughnut shop where he invented a cock-and-bull story, the gist of which was that he wished to retrieve a letter from his girlfriend's mailbox but could not do so himself. On this basis he recruited a 14–year–old boy as an unwitting accomplice, agreeing to pay the lad $30 to fetch the prize from the mailbox.

The pair reconnoitered the drop site. Petitioner then watched as the boy approached the mailbox and withdrew a paper bag. Instead of waiting for his courier to return,

however, petitioner drove away. We think a jury could properly have inferred either that petitioner's nerve failed or that he spied the stakeout. At any rate, he never obtained possession of the bag.

In due course, the authorities arrested petitioner, charged him, and proceeded to trial. After the Commonwealth presented its case, the petitioner testified in his own defense. He admitted colloquing with the inmate. He further admitted that he knew the mailbox contained both drugs and money, but he assumed that they would be in separate envelopes. He swore that he only intended to pocket the cash, not to deliver the cocaine. When he saw the paper bag, he thought that it probably contained drugs. At that point, he panicked and fled.

On cross-examination the prosecutor asked petitioner: "And, sir, you knew that that package contained drugs, and still, sir, you sent that fourteen year old kid to retrieve it, didn't you, sir?" The superior court judge, *sua sponte*, ruled the question improper, interjecting: "That's argumentative." The prosecutor immediately shifted gears.[1]

During closing argument, the prosecutor, using rhetorical questions to flay her prey, took unwarranted liberties with this portion of her cross-examination. She argued:

And what does the defendant do? He leaves the fourteen year old high and dry, knowing—I asked him. I said to him, "You knew that package contained cocaine, but still you sent a fourteen year old to retrieve it?"

And what did the defendant say? "Yes."

Petitioner's trial counsel did not object to the prosecutor's flagrant misstatement. In the end, the jury found petitioner guilty.

Following the imposition of sentence, petitioner secured the services of successor counsel and moved for a new trial, arguing that the prosecutor's distortion had caused justice to miscarry. The trial judge rejected the motion and petitioner appealed. The Massachusetts Appeals Court summarily affirmed

the denial of relief, *see Commonwealth v. Burks*, 34 Mass.App. 1106, 608 N.E.2d 1066 (1993) (table) (unpublished rescript), and the Supreme Judicial Court declined further appellate review, *see Commonwealth v. Burks*, 414 Mass. 1105, 617 N.E.2d 639 (1993) (table).

Little daunted, petitioner sought habeas corpus in the federal district court. He advanced a single claim: that the prosecutor's misstatement of the evidence in her summation deprived him of due process and thwarted his right to a fair trial. The respondent, a state correctional official, moved to dismiss, asserting that because petitioner had not objected to the misstatement when it was uttered in state court, his constitutional claim could not be entertained in a federal habeas proceeding. Petitioner acknowledged the procedural default but nonetheless opposed dismissal on two bases. He said that he could demonstrate cause for, and prejudice from, the procedural default; and, moreover, that absent habeas relief, a miscarriage of justice would go uncorrected. Judge Gertner, adopting the report and recommendation of a magistrate judge, overrode these objections and dismissed the petition. This appeal followed.

## II

### Analysis

#### A.

##### Applicable Legal Principles

The habeas corpus anodyne is designed neither to provide an additional layer of conventional appellate review nor to correct garden-variety errors, whether of fact or law, that may stain the record of a state criminal trial. Rather, the remedy is limited to the consideration of federal constitutional claims. *See Herrera v. Collins*, —— U.S. ——, ——, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993) (affirming that the purpose of federal habeas corpus review is to ensure that individuals are not imprisoned in violation of the Constitution); *see also Barefoot v.*

---

1. At first, it was thought that petitioner did not answer the question. In considering petitioner's motion for a new trial, however, the judge queried the court reporter, who consulted her tape recording of the testimony and reported that petitioner had in fact responded audibly, stating: "No. I did not."

*Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 3391, 77 L.Ed.2d 1090 (1983) ("Federal courts are not forums in which to relitigate state trials."). Thus, federal habeas review is precluded, as a general proposition, when a state court has reached its decision on the basis of an adequate and independent state-law ground. *See Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989); *Ortiz v. Dubois,* 19 F.3d 708, 714 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995).

■ A defendant's failure to object in a timely manner at his state criminal trial may constitute an adequate and independent state ground sufficient to trigger the bar rule so long as the state has a consistently applied contemporaneous objection requirement and the state court has not waived it in the particular case by resting its decision on some other ground. *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Puleio v. Vose,* 830 F.2d 1197, 1199 (1st Cir.1987), *cert. denied,* 485 U.S. 990, 108 S.Ct. 1297, 99 L.Ed.2d 506 (1988). Hence, a state court decision resting upon a finding of procedural default—such as a decision rooted in a defendant's noncompliance with an unwaived contemporaneous objection requirement—forecloses federal habeas review unless the petitioner can demonstrate cause for the default and prejudice stemming therefrom, or, alternatively, unless the petitioner can show that a refusal to consider the merits of the constitutional claim will work a miscarriage of justice. *See Coleman,* 501 U.S. at 750, 111 S.Ct. at 2564; *Harris,* 489 U.S. at 262, 109 S.Ct. at 1042.

■ This framework is directly pertinent to petitioner's appeal. Massachusetts has a routinely enforced, consistently applied contemporaneous objection rule. *See, e.g., Puleio,* 830 F.2d at 1199; *Commonwealth v. Fluker,* 377 Mass. 123, 385 N.E.2d 256, 261 (1979); *see also* Mass.R.Crim.P. 22. Petitioner honored this rule only in the breach; after all, his petition is based exclusively on his claim that the prosecutor misrepresented the evidence when summing up, yet he failed to lodge a contemporaneous objection at the time the misrepresentation took wing. Moreover, the state courts relied on, and did not waive, the contemporaneous objection requirement; the appeals court, for instance, rested its rejection of petitioner's belated complaints about the prosecutor's misstatement squarely on this adequate and independent state ground.[2] Consequently, we have before us a classic example of a procedural default, and petitioner can succeed in his habeas case only by showing cognizable cause for, and cognizable prejudice from, his procedural default or, alternatively, by demonstrating that the federal court's failure to address the claim on habeas review will occasion a miscarriage of justice.

### B.

#### Cause and Prejudice

■ Faced by a state-court judgment that rests upon an adequate and independent state ground, a habeas petitioner has the burden of proving both cause and prejudice. *See Coleman,* 501 U.S. at 750, 111 S.Ct. at 2564; *Wainwright,* 433 U.S. at 87, 97 S.Ct. at 2506; *Puleio,* 830 F.2d at 1202. Here, we start—and end—with cause.[3]

■ In the habeas context, cause is a term of art. To excuse a procedural default,

---

2. To be sure, the appeals court also reviewed the merits of petitioner's contentions to see whether a miscarriage of justice lurked in the record. But, given the contours of Massachusetts practice, *see, e.g.,* Mass.Gen.L. ch. 211A, § 10 (1989), that sort of limited review, clearly labelled, does not work a waiver. *See Tart v. Massachusetts,* 949 F.2d 490, 496 (1st Cir.1991) (explaining that state appellate review under the Massachusetts miscarriage of justice standard does not amount to state waiver of the contemporaneous objection rule); *Puleio,* 830 F.2d at 1200 (same).

3. Because we descry no cognizable cause sufficient to excuse petitioner's procedural default, *see infra,* we have no occasion to discuss the prejudice prong of the two-part inquiry in any great detail. We add in passing, however, that, having reviewed the full record, the state's case appears to have been very muscular. Viewed in light of all the evidence, the prosecutor's incorrect statement does not seem to us to have actually and substantially prejudiced petitioner. *See, e.g., Ortiz,* 19 F.3d at 714 (discussing prejudice standard).

a petitioner's cause must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *Magee v. Harshbarger,* 16 F.3d 469, 471 (1st Cir.1994). Mere attorney error, not amounting to ineffective assistance in a constitutionally significant sense, *see, e.g., Scarpa v. Dubois,* 38 F.3d 1 (1st Cir.1994), *cert. denied,* _____ U.S. _____, 115 S.Ct. 940, 130 L.Ed.2d 885 (1995) *and additional petition for cert. filed* (U.S. Oct. 27, 1994) (No. 94–9157), is insufficient to constitute cause.[4] *See Coleman,* 501 U.S. at 753, 111 S.Ct. at 2566; *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645; *Puleio,* 830 F.2d at 1201. The principle hardly could be to the contrary. If inadvertence of counsel, without more, were deemed to constitute sufficient cause, the cause requirement would be reduced to little more than a speed bump on the road to a federal forum.

In an effort to show that his procedural default was caused by an external, objective impediment, Burks avers that his trial counsel did not hear the answer to the prosecutor's improper question (quoted *supra* p. 715). This fact, petitioner contends, caused counsel's later silence when the prosecutor incorrectly recounted the testimony. Petitioner's thesis melts under the hot glare of scrutiny.

■ Assuming for the sake of argument that counsel's failure to hear a witness' response may constitute an external, objective impediment under some circumstances, *cf. Puleio,* 830 F.2d at 1201 (discussing, but sidestepping as unexhausted, a claim that trial counsel's hearing impairment operated as an external, objective impediment to compliance with the Massachusetts contemporaneous objection rule), it cannot do so here. To provide cause, a factor not only must be objectively ascertainable and external to the defense, but also must have brought about the event of default. *See generally* James S. Liebman, *Federal Habeas Corpus Practice*

*and Procedure* § 24.3, at 381–83 (Supp.1993). In other words, cause, as the name implies, must bear a causal relationship to noncompliance. That relationship is utterly lacking in this instance. We explain briefly.

There is no foundation in the record for suggesting that counsel did not hear the trial judge brand the question as being ultracrepidarian. And because the question itself was an improper subject for closing argument, defense counsel had precisely the same incentive to pounce on the prosecutor's subsequent reference to it whether Burks answered "no" or did not answer at all. In addition, even if defense counsel did not hear Burks respond *in the negative,* the prosecutor's misquotation was still a potentially harmful distortion, and defense counsel could and should have objected when the prosecutor asserted that petitioner had answered *in the affirmative.* On this basis, then, the lower court correctly concluded that petitioner failed to show any legally cognizable cause sufficient to excuse his procedural default.

## C.

### *Miscarriage of Justice*

■ Even absent a showing of cause and prejudice, a federal court exercising its habeas powers should nonetheless overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a fundamental miscarriage of justice. *See Murray,* 477 U.S. at 495–96, 106 S.Ct. at 2649. This is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence. *See Schlup v. Delo,* _____ U.S. _____, _____, 115 S.Ct. 851, 864, 130 L.Ed.2d 808 (1995); *Ortiz,* 19 F.3d at 714; *see also Watkins v. Ponte,* 987 F.2d 27, 31 (1st Cir.1993) (explaining that, in a habeas case, the "petitioner must supplement the constitutional violation with a 'colorable showing of factual innocence'") (quoting *McCleskey v. Zant,* 499 U.S. 467, 495, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991)).

---

4. We note that petitioner did not assert ineffective assistance of counsel as a basis for relief in his habeas corpus application, nor has he tendered such a claim on appeal.

To be sure, a habeas petitioner need not prove his innocence beyond all doubt in order to reach the safe haven of the miscarriage exception: it suffices if the petitioner can show a probability that a reasonable jury would not have convicted but for the constitutional violation.[5] *See Murray,* 477 U.S. at 496, 106 S.Ct. at 2649.

Here, petitioner has not made a satisfactory showing of actual innocence. His argument on this point alludes to no new information suggesting innocence, but merely rehashes the testimony adduced at his trial in an attempt to foster a suspicion that the prosecutor's overreaching may have been the straw that broke the dromedary's back and, thus, led the jury to convict. However, the miscarriage of justice standard requires more than a possibility of prejudice, *see Schlup,* —— U.S. at —— & n. 45, 115 S.Ct. at 867 & n. 45; *Sawyer v. Whitley,* —— U.S. ——, —— & n. 13, 112 S.Ct. 2514, 2522 & n. 13, 120 L.Ed.2d 269 (1992), and petitioner's excursion through the record does not by any stretch of the imagination show a probability of actual innocence. Accordingly, his speculation about what might—or might not—have been the outcome of an error-free trial is an exercise in futility. Put another way, petitioner's recreation of what transpired in the state trial court shows, at most, that there was a legitimate jury question as to his guilt, and that the prosecutor placed her thumb on the scales of justice at one point. This is not enough to qualify for extraordinary relief under *Schlup* and its precursors. As Justice Stevens wrote, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup,* —— U.S. at ——, 115 S.Ct. at 861.

We need go no further. Because petitioner has not shown that the failure to entertain his constitutional claim more likely than not will result in a fundamental miscarriage of justice, his habeas petition remains a casualty of his procedural default.

*Affirmed.*

**5.** Respondent asserts that *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), has placed a gloss on *Murray,* and now requires, in a noncapital case, that petitioner make a showing of actual innocence by "clear and convincing" evidence, rather than on a probability standard. *Id.* at ——, 112 S.Ct. at 2523. For two reasons, we cannot embrace this thesis,

at least at the present time. First, respondent may be reading *Sawyer* too broadly, especially in light of *Schlup.* Second, we note that, in all events, the appellant cannot satisfy even the probability standard limned in *Murray.* Consequently, we leave to another day the question of *Sawyer 's* (and *Schlup 's*) effect, if any, on the lessons of *Murray.*