[NOT FOR PUBLICATION NOT TO BE CITED AS PRECEDENT]

United States Court of Appeals
For the First Circuit

No. 99-1493

MICHAEL T. MIMS,

Petitioner, Appellant,

v.

PAUL DIPAOLO,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker,* Senior U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Boudin, Circuit Judge.

Dana A. Curhan for appellant.
Annette C. Benedetto, Assistant Attorney General, Commonwealth
of Massachusetts, with whom Thomas F. Reilly, Attorney General, and
Kenneth E. Steinfield, Assistant Attorney General, were on brief,
for appellee.

January 11, 2000


*Of the Southern District of New York, sitting by designation. SELYA, Circuit Judge. Invoking our habeas corpus
jurisdiction, see 28 U.S.C. 2241-2254, petitioner-appellant
Michael T. Mims invites us to set aside his state court conviction
for murder in the first degree. Like the district court, we
decline the invitation.
For the nonce, it suffices to say that after the brutally
mistreated body of Belinda Miscioscia was discovered in an alley in
Chelsea, Massachusetts, on June 27, 1993, the authorities charged
Mims and a compatriot, Michael Cowels, with her slaying. A jury
found each of them guilty of first-degree murder, and the
Massachusetts Supreme Judicial Court (SJC) affirmed their
convictions. See Commonwealth v. Cowels, 680 N.E.2d 924 (Mass.
1997). The petitioner then filed an application for habeas relief
in the federal district court, but to no avail. See Mims v.
DiPaolo, No. 98-CV-11203-MEL (D. Mass. Apr. 1, 1999) (unpublished
mem. op.). The district court did, however, grant a certificate of
appealability. See 28 U.S.C. 2253(c); Fed. R. App. P. 22(b); see
also Grant-Chase v. Commissioner, N.H. Dep't of Corrections, 145
F.3d 431, 435 (1st Cir. 1998).
On appeal, the petitioner asseverates that (1) the
evidence against him was inadequate to permit a jury to convict
him, and (2) certain statements made by the prosecutor during
closing argument deprived him of a fair trial. Mindful of the
limits that attach to the federal courts' power to review state
convictions in habeas proceedings, see, e.g., O'Brien v. Dubois,
145 F.3d 16, 20-25 (1st Cir. 1998), the petitioner wraps both
asseverations in the trappings of due process.
The facts of the case have been canvassed methodically by
the SJC, and we refer the reader who thirsts for greater detail to
that court's lucid opinion. See Cowels, 680 N.E.2d at 926-28. 
Under current law (applicable to this case), our review of habeas
petitions brought by state prisoners is governed by the
Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28
U.S.C. 2254(d). The AEDPA significantly alters the treatment of
such petitions. See O'Brien, 145 F.3d at 20-25. Among other
things, it brings the state court's decision to center stage and
requires the performance of a bifurcated analysis. See id. at 20. 
First, the reviewing (federal) court must ask whether the United
States Supreme Court has prescribed a rule that governs the
petitioner's claim and, if so, whether the state court decision is
contrary to that rule. If such a rule exists, and if the state
court decision contravenes it, relief may be granted. If, however,
the state court correctly apprehended the rule (or, alternatively,
correctly apprehended the absence of a governing rule), the habeas
court proceeds to the second step of the analysis and determines
whether the state court's resolution resulted in an unreasonable
application of existing Supreme Court case law. See id. at 24.
Against this backdrop, we turn initially to the
petitioner's insufficiency-of-evidence claim. The parties agree,
as they must, that a landmark Supreme Court precedent directly
governs this aspect of the case. See Jackson v. Virginia, 443 U.S.
307 (1979). The core holding of Jackson is that the Due Process
Clause precludes a valid criminal conviction unless the evidence
admitted at trial, taken as a whole and interpreted in the light
most favorable to the prosecution, suffices to permit a rational
trier of fact to find the defendant guilty beyond a reasonable
doubt. See id. at 319. Because the SJC identified and articulated
this tenet, see Cowels, 680 N.E.2d at 929 & n.6 (citing
Commonwealth v. Latimore, 393 N.E.2d 370, 374 (Mass. 1979), and
noting that it incorporates the Jackson criterion), we move to the
second tier of the AEDPA test.
The petitioner argues vociferously that although the SJC
paid lip service to the Jackson standard, it unreasonably
(mis)applied that standard. Stripped of rhetorical flourishes, his
argument boils down to the assertion that, even after taking the
evidence in the aspect most congenial to the prosecution and
drawing all reasonable inferences in its favor, no responsible jury
could have found him guilty beyond a reasonable doubt.
Inasmuch as the district court already has addressed
(and, in our view, successfully rebutted) this same assertion, we
need not tarry. The short of it is that the SJC's careful analysis
of the evidence belies the petitioner's argument. See id. at 928-
29. As that court noted, multiple witnesses placed Mims and Cowels
in the decedent's company on the night of her murder; indeed, they
were the last people seen with her. The evidence further
established that Mims and Cowels each had a prior sexual
relationship with the decedent; that she had voiced fears about
being with them; that both Mims and Cowels attempted to dispose of
clothing which they had been wearing on the night in question; and
that each of them lied to the police when questioned about their
activities. The jury also heard testimony that Mims and Cowels
threatened others in what reasonably could be construed as a
concerted effort to procure the silence of prospective witnesses. 
Last but far from least a percipient witness testified that, on
the night of the slaying, Cowels, in the petitioner's presence and
within his earshot, declared that "we killed her" and the
petitioner offered no disclaimer.
We think that this evidence more than suffices to allow
a rational finder of fact to deem the petitioner's guilt proven
beyond a reasonable doubt, and thus to ground the petitioner's
conviction under Jackson. That this case arises on habeas review
cinches the matter. After all, under the AEDPA, the key question
is not whether we, if sitting as a jury or as a court of first
instance, would conclude that the Commonwealth had proved its case,
but, rather, whether the state court decision is "so offensive to
existing precedent, so devoid of record support, or so arbitrary,
as to indicate that it is outside the universe of plausible,
credible outcomes." O'Brien, 145 F.3d at 25; accord Vieux v. Pepe,
184 F.3d 59, 66 (1st Cir. 1999), petition for cert. filed, 
U.S.L.W. (U.S. Oct. 18, 1999) (No. 99-6629); Bui v. DiPaolo,
170 F.3d 232, 243 (1st Cir. 1999), petition for cert. filed, 
U.S.L.W. (U.S. June 14, 1999) (No. 98-9840). Given this
expansive framework, the state court decision easily passes muster.
The petitioner's second asseveration likewise lacks
force. He maintains that the prosecutor's summation was so
improper and injurious that it violated his right to due process,
and that the state court's refusal to recognize that verity
constituted an unreasonable application of federal law.
This is one of those context-contingent situations in
which it cannot fairly be said that the case is controlled by a
closely analogous Supreme Court precedent. See O'Brien, 145 F.3d
at 24-25 (discussing, in general terms, what is needed to bring the
first prong of the AEDPA analysis to bear). In the absence of
explicit Supreme Court guidance, we proceed to the second tier of
the AEDPA test and ask whether the SJC's rejection of the
petitioner's "improper summation" plaint constituted an
unreasonable application of general principles of federal
constitutional law as articulated by the Supreme Court.
The SJC noted in its opinion that the prosecutor had gone
too far and had impermissibly appealed to emotion in his closing
argument. See Cowels, 680 N.E.2d at 930. For example, the
prosecutor described the decedent's screams (despite the utter
absence of any evidence to that effect) and repeated numerous
times, for no discernibly valid purpose, testimony that the
petitioner had called the victim vile names. See id. On habeas
review, however, it is not enough for the petitioner to show that
an error occurred; he must show that the error was of
constitutional magnitude. See Darden v. Wainwright, 477 U.S. 168,
181 (1986); Puleio v. Vose, 830 F.2d 1197, 1204 (1st Cir. 1987). 
He also must show that the state court's treatment of the error
resulted in an unreasonable application of federal constitutional
law as articulated by the Supreme Court. See O'Brien, 145 F.3d at
24. While it is theoretically possible for a prosecutor's closing
argument to go so far afield as to threaten due process, see, e.g.,
Shurn v. Delo, 177 F.3d 662, 667 (8th Cir.), cert. denied, 120 S.
Ct. 510 (1999); Mahorney v. Wallman, 917 F.2d 469, 473-74 (10th
Cir. 1990), no such constitutional infirmity looms here,
notwithstanding the excesses in which the prosecutor needlessly
indulged. See James v. Bowersox, 187 F.3d 866, 869-70 (8th Cir.
1999) (holding that state prosecutor's reference to petitioner as
"slime" during closing argument did not sink to the level of a due
process violation), petition for cert. filed, U.S.L.W. 
(U.S. Dec. 15, 1999) (NO. 99-7516); Duvall v. Reynolds, 139 F.3d
768, 794-95 (10th Cir.) (holding that state prosecutor's comments
during final argument, though plainly improper, did not render
petitioner's trial fundamentally unfair), cert. denied, 119 S. Ct.
345 (1998); see also Amirault v. Fair, 968 F.2d 1404, 1406 (1st
Cir. 1992). Consequently, we hold that the SJC's reasoned
resolution of the "improper summation" charge not only gave the
petitioner all the process that was due, but also accorded with the
rigors of clearly established federal constitutional law.
We need go no further. Simply put, the petitioner cannot
come close to clearing the AEDPA hurdle. For aught that appears,
Mims was fairly tried and justly convicted. Accordingly, the
district court did not err in rejecting his application for a writ
of habeas corpus.

Affirmed.