**UNITED STATES of America, Appellee,**

v.

**Daniel REIS, Defendant, Appellant.**

**No. 85–1240.**

United States Court of Appeals,
First Circuit.

Argued Oct. 11, 1985.
Decided April 8, 1986.

Norman E.V. D'Andrea, Providence, R.I., for defendant, appellant.

James E. O'Neil, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief for appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and HILL,* District Judge.

IRVING HILL, Senior District Judge:

Appellant, Daniel Reis, was convicted after a jury trial on all counts of a three-count indictment charging federal firearms offenses. Count One charged that Reis, a co-defendant named Langdeau and others conspired to transport five stolen firearms in interstate commerce, knowing the guns were stolen, a violation of 18 U.S.C. § 371. Count Two charged Reis, Langdeau and others with unlawfully transporting the five stolen firearms in interstate commerce from Attleboro, Mass. to Pawtucket, R.I., knowing the firearms to have been stolen, a violation of 18 U.S.C. § 922(i). Count Three charged Reis, Langdeau and others

---

* Of the Central District of California, sitting by designation.

with possession of the same firearms in commerce by a convicted felon, a violation of 18 U.S.C. App. § 1202(a)(1).

The case against the others was apparently disposed of at an early date. Reis and Langdeau were scheduled to be tried together. Pursuant to a motion by Langdeau, his case was severed for trial and Reis went to trial alone in December 1984. The jury failed to reach a verdict and a mistrial was declared. Reis's second trial commenced on January 9, 1985. After his conviction, Reis was sentenced as follows: 5 years imprisonment on Count One, 5 years probation on Count Two, and 5 years probation on Count Three. The two probationary terms were to run concurrently and were to commence after completion of the term of imprisonment. At the time of Reis's sentencing (and at the time of the argument of this appeal) Reis was in the custody of Rhode Island state authorities pursuant to a state conviction for different offenses.

Reis's appellate brief, which is not a model of clarity, appears to raise a great many separate points. We deal with them seriatim as best we understand them.

### FACTS OF THE CASE

The evidence offered against Reis may be briefly summarized. On May 16, 1984, a Mr. Cameron observed four men break into and enter his home in Attleboro, Mass. He saw them come out carrying a group of his firearms and other items. Some coins were also later found to have been stolen. Cameron recognized Reis, with whom he had been previously acquainted, as one of the burglars. Cameron was also able to describe the purple car in which the four men drove away.

Cameron immediately notified the Attleboro police, who responded promptly. Cameron had seen the getaway car heading toward Pawtucket, R.I. The Attleboro police notified the Pawtucket police. Pawtucket police officers spotted the car, pursued it in a high speed chase and finally caused it to stop. Four men tumbled out of the car and fled. The police ap-prehended three of them at the scene, including codefendant Langdeau. Reis was not apprehended at the scene. Shortly thereafter, Reis was arrested on a Pawtucket street approximately 1 to 1–½ miles from where the others had been arrested.

Five firearms stolen from Cameron's house were recovered from the automobile. Those firearms are the subject of the indictment and are described in each count. Keys to the getaway car as well as some coins similar to those stolen from the Cameron residence were found on Reis's person after he was arrested. Reis stipulated that he was a previously convicted felon.

### DOUBLE JEOPARDY

■ Reis argues that his second trial, after his first trial resulted in a mistrial because of a hung jury, is somehow void. Although a double jeopardy challenge is not expressly articulated, it is implied. An identical claim of double jeopardy was summarily rejected by the Supreme Court in *Richardson v. United States,* 468 U.S. 317, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242 (1984). Based on that authority, we reject the double jeopardy claim here.

Reis's appellate brief can also be read as making an argument which is somewhat different from the double jeopardy claim. Following the declaration of a mistrial at the end of the first trial, Reis's lawyer moved for acquittal. The trial court promptly denied that motion. Apparently Reis did not notice any appeal from the order denying the motion.

■ Counsel now seems to be arguing that the denial of the acquittal motion was an error which vitiates the conviction in the second trial. Counsel seems to urge that the trial court should have considered the failure of the first jury to reach a verdict as somehow giving extra weight, or a presumption of validity, to a motion for acquittal. If that is his contention, we also reject it. No authority supports that proposition. We assume without deciding that Reis may now, after being convicted at a second trial, question the propriety of the denial of his

motion made following the first trial. But Reis does not profit from the assumption. We hold that the trial court correctly decided Reis's motion for acquittal under the proper standard of law. The trial court found that there was "sufficient basis for a reasonable juror, drawing inferences favorable to the government, from that evidence, to find [Reis guilty as charged]". No error is shown in regard to this claim.

## THE VALIDITY OF THE SENTENCES

Reis's counsel makes multiple attacks upon the sentences imposed by the trial court. But even after many readings of this section of counsel's brief, it is difficult to understand or characterize the precise attacks being made.

The main argument appears to be that the sentences somehow are duplicative punishments for the same criminal act and thus violate standards established by the Supreme Court in *Ball v. United States,* — U.S. ——, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985).

■ If Reis is contending that separate sentences on the conspiracy count and on either or both substantive counts violate the *Ball* rule as being duplicative and for the same criminal act, he is clearly wrong. It has long been established that violation of a conspiracy statute and substantive criminal violations, which were the objects of the conspiracy, may be separately charged and, on conviction, may be properly punished by separate sentences. *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946); *United States v. Powell,* 632 F.2d 754 (9th Cir.1980); *see also United States v. Bosch,* 615 F.2d 210 (1st Cir.1978). Nothing in the *Ball* decision indicates any weakening of this well established line of authority.

If Reis is contending that separate sentences for Count Two (unlawful transportation of stolen firearms in interstate commerce) and Count Three (unlawful possession by a convicted felon) are punishments for the same offense (a result prohibited by the rule of the *Ball* case), he is also clearly wrong. In *Ball* the Supreme Court held that separate punishments for the offense of possession of a firearm by a convicted felon (18 U.S.C. § 922(h)) and the offense of receiving the same firearm by a convicted felon (18 U.S.C. App. § 1202(a)(1)) were invalid as being two punishments for the same act. The Court emphasized that the elements of the two offenses were identical. *Ball,* 105 S.Ct. at 1672.

■ In this case, the inquiry as to whether the same act is being twice punished must focus on whether each statutorily defined offense requires proof of at least one fact, one element, which the other offense does not. If the elements are not identical, separate punishments are valid. *See Blockburger v. United States,* 284 U.S. 299, 302, 52 S.Ct. 180, 181, 76 L.Ed. 306 (1931). As to Counts Two and Three in the instant case, it is obvious that the elements are different. Count Two requires proof that the defendant knew the firearms were stolen. Count Three does not. Count Three requires proof that the defendant was a previously convicted felon. Count Two does not. The separate punishments under Counts Two and Three in the instant case are consistent with the rule enunciated in *Ball.*

■ Reis also argues that the sentences imposed on him are invalid because they are "greater than the guidelines supplied to the Court in the presentence report which indicated that the average sentence was approximately 36 to 42 months". Appellant's Brief p. 9. It is evident that the "guidelines" to which the argument is addressed are statements customarily included in presentence reports which indicate guidelines the U.S. Parole Commission uses when granting parole. In support of his argument, counsel cites 18 U.S.C. § 3742. That lengthy statute, passed in 1984, is not on point. It provides for appellate review of sentences which are in excess of sentence guidelines to be enacted by a Federal Sentencing Commission. No such guidelines have yet been promulgated. Reis has not shown that any provision of Section 3742 is applicable to the present sentences,

nor that the statute has in any way been violated.

All of Reis's attacks upon the sentences must be rejected. The sentences imposed are within the limits permitted by law. They cannot be construed in any way as invalid or unconstitutional.

## TESTIMONY OF OFFICER MOREAU

In the second trial, the government called a witness, Officer Moreau, who was not called as a witness in the first trial. Reis makes several complaints about this in his appellate brief. First, he claims that he received no statement of this witness from the government in advance of the testimony. He claims this constitutes a violation of the Jencks Act, 18 U.S.C. § 3500. The transcript reveals that no such statement existed, so no violation of the Jencks Act occurred.

Reis's counsel further complains that he was not given Moreau's name as a witness in advance of the second trial, although the names of many government witnesses were provided to him at that time. The government denies that it either furnished any list of witnesses to counsel or agreed to furnish any such list. Counsel has not produced any citation to the record or other evidence to substantiate either the furnishing of a list or an agreement to provide one. Counsel, of course, learned the names of most of the government's witnesses from the first trial. His essential claim seems to be that the government produced a witness in the second trial that it had not used in the first.

■ This claim is without merit. There is no requirement under F.R.Crim.P. 16 or otherwise in the law, mandating the disclosure to the defense of the identity of the government's trial witnesses. *United States v. Barrett*, 766 F.2d 609, 617 (1st Cir.1985). Even when the government has produced a witness list and/or a description of its evidence in advance, when a witness or evidence not previously listed is offered, the decision to admit the testimony or evidence is within the discretion of the trial judge. *United States v. Elam*, 678 F.2d 1234, 1253 (5th Cir.1982). *See also United States v. Cox*, 752 F.2d 741 (1st Cir.1985). At the trial, Reis's counsel objected to the government's use of Moreau as a "surprise" witness, but the objection was overruled. No abuse of discretion is shown in connection with that ruling.

## CLOSING ARGUMENT OF THE PROSECUTOR

Reis argues that certain remarks of the prosecutor in closing argument were so prejudicial that the convictions should be reversed.

First, Reis cites the fact that the prosecutor several times during the closing argument referred to Reis as a convicted felon. Reis did not take the stand in the trial and, as earlier stated, stipulated that he was a convicted felon. The argument seems to be that reference to the defendant as a convicted felon constituted reversible error as an unjustified characterization of him as a bad person and as impermissible comment on his failure to take the stand.

■ Our review of the record convinces us that no impropriety occurred in this respect. The prosecutor was in each instance describing the various offenses charged and how Reis and his conduct met the necessary elements of each. His status as a convicted felon was a necessary element of one of the charged offenses and a mention of the stipulation was appropriate, since it was evidence that the element had been proved. None of the closing argument wherein the previous conviction was mentioned can possibly be construed as reflecting improperly on Reis's character or as commenting on his exercise of his Fifth Amendment privilege.

Next, Reis complains that, at one place in the argument, the prosecutor characterized him as a "cool cucumber". This occurred when the prosecutor was describing testimony that when Reis was walking down a street in Pawtucket, shortly after the burglary, he saw a Pawtucket police officer named Stewart driving along the same street and waved to Stewart whom he had

known in the past. Unfortunately for Reis, Mr. Cameron, the victim, was in another car following behind the Stewart car and was able to point out Reis as one of the burglars.

■ To characterize Reis's conduct as the act of a "cool cucumber" seems harmless to us. It was certainly a fair characterization and within the limits of fair comment. No authority has been cited to us, and we have found none, which even remotely suggests that language such as that in question is ground for reversal.

We also note that no contemporaneous objection was made by Reis's counsel and no curative instruction was requested as to either the prior conviction references or the "cool cucumber" remarks.

## MATTERS RELATED TO A JUROR

After the jury was impaneled and the trial had begun, a Secret Service agent named Hart was seated at government counsel table with the prosecutor. He had not been present when the jury was interrogated on voir dire. Hart was apparently the agency's investigating officer for the case.

The prosecutor promptly asked for a conference at side bar and informed the judge that Hart was an acquaintance of juror No. 12, Mr. Whitten, and that they served together in a military reserve unit. He further told the judge that Hart would not be offered as a witness in the trial. Hart did not testify.

In the side bar conference, when asked for his comment on the situation, defense counsel did not ask that Whitten be excused. Instead he said, "I would simply ask if he could render an effective judgment. I don't want to excuse him at this point." The judge then inquired of the juror, Whitten, as to his acquaintance with Hart and the nature of their relationship. Whitten replied that both he and Hart were noncommissioned officers in the same military unit and they had known each other for a year. The judge then asked Whitten whether that acquaintance and relationship

would make any difference. Whitten said it would not and that he could be totally fair to both sides. Thereafter, defense counsel was allowed to interrogate Whitten directly. He also asked Whitten if he would in any way be prejudiced against the defendant by virtue of his acquaintance with Hart. The juror said, "No", and again stated that he could make a fair and impartial decision. Thereafter defense counsel said, "I think he's acceptable". Defense counsel never challenged Whitten or asked that he be excused.

■ Now, on appeal, defense counsel seems to be arguing that Whitten should have been treated throughout the trial as an alternate juror and should have been excused from deliberations. No authority is cited which even remotely approaches the position taken by defense counsel. The areas of jury selection and excusal and disqualification of jurors are areas in which judicial discretion is very broad. Clear abuse of discretion is a minimum requirement for reversal. *United States v. Gullion*, 575 F.2d 26, 29 (1st Cir.1978).

Reis's contention in this respect is totally without merit.

## THE SEVERANCE OF THE CODEFENDANT

Reis and his codefendant Langdeau were scheduled to go to trial together on December 17, 1984. However, on that same date, Langdeau moved to sever his case from that of Reis. Apparently Reis's counsel offered no objection to Langdeau's motion and made no motion to sever on behalf of Reis. The trial court proceeded to grant Langdeau's motion and Reis's trial (his first trial) then commenced. Langdeau pled guilty to all counts on January 31, 1985, after the conclusion of Reis's second trial.

In this appeal Reis claims that he was prejudiced by the severance of Langdeau. That claim was never made to the trial court and is advanced here for the first time—in a half-page argument without citation of authority. Reis alleges that the

severance of Langdeau deprived him of the opportunity of calling Langdeau as a witness. He says that this deprivation was highly prejudicial because Langdeau had stated to both Reis's counsel and to his own counsel that Reis had nothing to do with this crime.

The law seems to be that a defendant who seeks to have the benefit of a co-defendant's testimony must move for severance in the trial court. F.R.Crim.P. 12(b)(5). The claim of prejudice must be buttressed by a factual showing, beyond a mere assertion by counsel, that some actual prejudice will result from having to be tried with the co-defendant or before him. The showing must consist of a detailed description of the substance of the co-defendant's testimony with emphasis on the exculpatory nature and effect thereof. The showing must also set forth in some detail the basis for asserting the likelihood that the co-defendant would waive his Fifth Amendment privilege and testify. *United States v. Drougas,* 748 F.2d 8 (1st Cir. 1984); *United States v. Parodi,* 703 F.2d 768 (4th Cir.1983).

■ None of the above requirements were met in this case. Reis made no motion in the trial court. Reis advanced no claim of prejudice to the trial court. Reis made none of the above specified showings to the trial court. Indeed, but for Langdeau's motion to sever, Reis would have been tried with Langdeau and apparently would have been content with a joint trial. If he had been tried with Langdeau, he would not have had any better opportunity to avail himself of Langdeau's testimony than he ultimately had after Langdeau's severance.

Reis's unsupported and undocumented claim of prejudice, made here for the first time, raises no substantial issue which would affect or undermine his conviction.

## BAIL

Following his conviction, Reis moved in the trial court for bail pending appeal. After a considerable discussion and argument of that motion, it was denied. Reis claims that the denial was error.

■ We find no abuse of discretion or other error in connection with the denial of the motion. Moreover, as the government points out, the motion was moot at the time it was denied and continued to be moot at the time of the appellate argument before us. At all such times, Reis was in the custody of Rhode Island authorities on unrelated state charges. Even if the matter of bail on appeal is not now moot (and Reis does not show that his confinement to Rhode Island has come to an end), it will be rendered moot again by our affirmance of the instant conviction.

For the reasons set forth above, the judgment of the trial court is affirmed.