Val MAYFIELD, Petitioner,

v.

Michael MALONEY, Respondent.

Civ. A. No. 88–2328–MA.

United States District Court,
D. Massachusetts.

April 17, 1990.

**1152**

John J. Bonisalli, Lecompte, Emanuelson, Tick & Doyle, Boston, Mass., for petitioner.

Judy G. Zeprun, Asst. Atty. Gen., Crim. Bureau, Boston, Mass., for respondent.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This action presents a petition under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody. The petitioner, Val Mayfield, is a prison inmate at the Massachusetts Correctional Institution ("MCI")—Cedar Junction. The named respondent, Michael Maloney, is the Superintendent of MCI–Cedar Junction.[1] The petitioner asserts four constitutional challenges to his state court conviction, arguing: (1) that the trial judge admitted statements in violation of the petitioner's fifth amendment privilege against self-incrimination, (2) that the trial judge denied the petitioner due process by excluding improperly testimony which allegedly tended to incriminate a key prosecution witness, (3) that an erroneous supplemental reasonable doubt instruction given to the jury by the trial judge deprived the petitioner of due process, and (4) that the retrial of the petitioner on the first degree murder charge violated his protection against double jeopardy. For the reasons set forth below, the petition for a writ of habeas corpus is denied.

### I.

On October 21, 1983, the Suffolk County Grand Jury indicted the petitioner for the August 1, 1983 first degree murder and rape of eleven year old Mary Ann Hanley. After a trial in Suffolk Superior Court, the jury returned a verdict of not guilty as to the rape indictment on April 23, 1984. On April 24, 1984, the trial judge declared a mistrial because the jury was deadlocked on the indictment for murder.

After the approval of the petitioner's motion for a change of venue, a retrial began on October 1, 1984 in Middlesex Superior Court. On November 3, 1984, the jury found the petitioner guilty of first degree murder. In an opinion issued November 25, 1986, the Massachusetts Supreme Judicial Court ("SJC") affirmed this conviction. *See Commonwealth v. Mayfield,* 398 Mass. 615, 500 N.E.2d 774 (1986).

On October 18, 1988, the petitioner filed a request under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody.[2] The respondent answered on August 4, 1989 and filed an opposition motion on October 6, 1989. The petitioner replied on December 14, 1989. This petition is now before the court.

### II.

Under 28 U.S.C. § 2254, the petitioner may challenge his state conviction and seek a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This court may not grant a writ of habeas corpus unless the petitioner "has exhausted the remedies available in the courts of the State" by presenting both the legal and factual bases of each claim to the state

---

1. In this habeas corpus petition filed under 28 U.S.C. § 2254, the court deems the Commonwealth of Massachusetts as the actual respondent in interest. *See, e.g., Nadworny v. Fair,* 872 F.2d 1093, 1095 (1st Cir.1989).

2. This is the petitioner's second request for habeas corpus relief; his first petition under 28 U.S.C. § 2254, (C.A. 87–1779–Mc), was dismissed without prejudice by this court on January 15, 1988 as being a "mixed" petition, presenting both claims that had been exhausted, as well as claims that had not been exhausted, in state court.

courts. 28 U.S.C. § 2254(b); *see also Nadworny v. Fair*, 872 F.2d 1093, 1096 (1st Cir.1989). Although the statute provides grounds for rebuttal, federal courts in habeas proceedings must afford the factual findings of state trial or appellate courts a presumption of correctness. 28 U.S.C. § 2254(d)(1–8); *Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981). In sum, "[f]ederal habeas is not an ordinary error-correcting writ ... [It] constitutes an extraordinary remedy, regularly sought but less regularly granted, protecting fundamental federal rights by correcting certain important abuses which everyday legal mechanisms have failed to prevent." *Nadworny*, 872 F.2d at 1096.

Neither petitioner nor respondent has requested an evidentiary hearing. After careful examination of the memoranda and transcripts submitted by the parties, this court determines that the record is sufficiently complete for dispositive habeas review. *See* Rule 8(a) foll. 28 U.S.C. § 2254. The SJC has set forth the factual background of the circumstances surrounding the crime, *see Mayfield*, 398 Mass. at 616–19, 500 N.E.2d at 776–77, which is not repeated here except to the extent necessary to address fully each of the petitioner's four challenges to his state court conviction.

### A.

The petitioner first asserts that the trial judge improperly denied his motion to suppress testimony concerning his statements and conduct obtained during the course of a police interrogation on August 9, 1983. After an evidentiary voir dire hearing, the trial judge made the following findings of fact. The petitioner voluntarily came to the police station by prearrangement, received his *Miranda* warnings from one of the two police detectives in the office room and was told that he was free to leave at any time. During the course of the tape-recorded interview, the questioning focused on the identity of one John Vasquez, whom Mayfield alleged to have been seeking during a critical time period in the crime investigation. After the interviewing officer asked if Vasquez was related to Mayfield's sister, the petitioner responded, "No. I don't want to answer no question[s]."[3] The officer countered with, "Why? Come on Val.," and the petitioner continued responding to a series of questions concerning his own actions on the night of the crime. Near the end of the interview, the police officer showed the petitioner a photograph of the victim's body. Mayfield then rose and left the room, and one officer turned off the tape recorder.[4] Following Mayfield into the hallway, the other officer asked him a question substantially to the effect of "How do you think it will look if you leave now?," whereupon the petitioner returned to the room. The police officers then said something to the effect of "You did it. You know you did it," and requested fingerprints and head and pubic hair samples from the petitioner. Mayfield replied that he needed time to think, and he then terminated the interview and left the police station.[5]

The trial judge found that the police officers conducted the interrogation in a conversational manner, that the petitioner made all of his responses voluntarily, that the petitioner was not in custody, and that, in any event, he did not invoke his right to remain silent. The SJC affirmed the trial judge's determination that the petitioner was not in custody. *Mayfield*, 398 Mass. at 627, 500 N.E.2d at 781. The SJC noted

---

**3.** The trial judge noted in his findings that the tape recording itself, which the jury heard, was the best evidence of whether the petitioner stated "question" or "questions." The transcript of the interview quotes Mayfield as saying, "No. I don't want to answer no question."

**4.** Since the trial judge denied the petitioner's motion to suppress, the respondent was allowed to elicit testimony at trial from the two police officers regarding the petitioner's unrecorded statements. The detectives testified that Mayfield moaned and bounced off the wall of lockers in the interview office after being shown the victim's photograph. During his voir dire testimony, Mayfield denied having this reaction.

**5.** The petitioner did return voluntarily to the police station the following day to provide the requested fingerprints and hair samples.

that the petitioner was only one of several suspects when he went voluntarily to the police station, that the detectives at no time had probable cause to arrest the petitioner, and that the interview was conducted in a non-threatening, conversational manner. *Id.* at 627, 500 N.E.2d at 781.

Under 28 U.S.C. § 2254(d), a presumption of correctness attaches to factual determinations made by a state court after a hearing on the merits. This presumption applies equally to findings made by either appellate or trial state tribunals. *Mata,* 449 U.S. at 546, 101 S.Ct. at 769. The petitioner, however, argues that the factual determination by the state trial judge and the SJC that the petitioner was not in custody during the August 9, 1983 interrogation is "not fairly supported by the record." 28 U.S.C. § 2254(d)(8). The petitioner contends that the interview constituted a custodial interrogation and that the police officers failed to honor the petitioner's right to remain silent and to cut off questioning.

In the *Miranda* opinion, the Supreme Court defined custodial interrogation as the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), *reh'g denied,* 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966). While the *Miranda* opinion does not create a *"per se* proscription of infinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent," *Michigan v. Mosley,* 423 U.S. 96, 102–03, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), law enforcement officials must scrupulously honor a person's right to remain silent and to cut off questioning during a custodial interrogation. *Miranda,* 384 U.S. at 473–74, 478–79, 86 S.Ct. at 1627–28, 1629–30; *Mosley,* 423 U.S. at 103–04, 96 S.Ct. at 326–27. No *Miranda* warnings are required, however, unless "there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam).

Employing the objective standard mandated by the First Circuit, *see United States v. Masse,* 816 F.2d 805, 809 (1st Cir.1987), I conclude that the petitioner was not in custody during the August 9, 1983 interview. Although any police station interrogation of one suspected of a crime will contain an inherently coercive aspect, *see Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714, a person is not "in custody" merely because he is being questioned in a station house environment. *See id.* at 493–96, 97 S.Ct. at 713–14 (defendant was not in custody where he came to the police station voluntarily by prearrangement, was informed that he was not under arrest but that he was a burglary suspect, was falsely told that his fingerprints were found at the scene, and confessed to the crime); *California v. Beheler,* 463 U.S. 1121, 1122–25, 103 S.Ct. 3517, 3518–20, 77 L.Ed.2d 1275 (1983) (per curiam) (defendant was not in custody where he voluntarily agreed to accompany the police to the station house to discuss a murder he had reported that day, was informed that he was not under arrest, left the police station unhindered, and was arrested five days later); *McCown v. Callahan,* 726 F.2d 1, 5–6 (1st Cir.1984) (defendant was not in custody where he was approached by police in his car after being chased by an unmarked police vehicle, was informed that he was not under arrest, voluntarily accompanied the officer to the police station, was told that he was not required to answer any questions and that he was free to leave, gave incriminating statements, left the station, and was arrested two hours later), *cert. denied,* 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 78 (1984).

Unlike the defendants in these three examples of noncustodial police interrogation at a station house, the petitioner here was apprised fully of his rights encompassed in the *Miranda* warnings. Although Mayfield was not explicitly informed that he was not under arrest, the interrogating detectives did tell the petitioner that, "You don't have to be here if you don't want to," and "You have the right to walk out of here at any time you want." Such statements are incongruous with "a 'formal ar-

rest or restraint on freedom of movement' of the degree associated with a formal arrest," which is the Supreme Court benchmark for a custody determination. *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520 (quoting *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714).

 When the petitioner arrived voluntarily by prearrangement at the police station, he was one of several suspects in a murder investigation.[6] The interview was conducted in the detectives' room, a second-floor office with two or three desks and chairs and with lockers against the wall. Two police officers were present, although one officer asked most of the questions. Mayfield was informed fully of his *Miranda* rights, and he was told that he did not have to answer any questions and that he was free to leave at any time. The police conducted the interrogation in a non-threatening, conversational manner. The petitioner did not give body samples that day as the officers requested, and he left the police station unhindered at the end of the interview. The petitioner was not arrested until more than two months later. Despite the petitioner's assertion of 28 U.S.C. § 2254(d)(8), this court finds that the record fairly supports the factual determination that Mayfield was not in custody at the August 9, 1983 police station interrogation.[7]

While this case does not present the more common problem arising when a person has not been given *Miranda* warnings and argues that his interrogation was custodial, *see, e.g., Beheler*, 463 U.S. at 1122, 103 S.Ct. at 3518; *Mathiason*, 429 U.S. at 493, 97 S.Ct. at 713; *McCown*, 726 F.2d at 5, the facts of this case present a different, yet troubling, issue. Although the petitioner does not expand on this argument in his

habeas response brief, it was raised in his appeal brief to the SJC and merits this court's attention. The petitioner argues that since he was read his rights, he was entitled to rely in good faith upon them. The police told Mayfield that he did not have to answer any questions and that he had a right to remain silent. Yet when Mayfield stated during the interview, "I don't want to answer no question[s]", the officers did not scrupulously honor the petitioner's right to cut off questioning as is required in custodial interrogations. *See Miranda*, 384 U.S. at 473–74, 478–79, 86 S.Ct. at 1627–28, 1629–30; *Mosley*, 423 U.S. at 103–04, 96 S.Ct. at 326–27. The petitioner asserts that individuals who are read their constitutional rights should be entitled to exercise them with their full import and should not be required to make on-the-spot assessments of whether they are, in fact, in custody and therefore entitled to the full protection of the *Miranda* warnings. If such practices are sanctioned, the petitioner argues that the reading of an individual's *Miranda* rights will become merely a token gesture on the part of law enforcement officials.

The response to this attractive and compelling argument can be found in the rationale behind the requirement of the *Miranda* warnings themselves. "The purpose of the *Miranda* warnings ... is to dissipate the compulsion inherent in custodial interrogation and, in so doing, guard against abridgment of the suspect's Fifth Amendment rights." *Moran v. Burbine*, 475 U.S. 412, 425, 106 S.Ct. 1135, 1143, 89 L.Ed.2d 410 (1986). The Supreme Court has "specifically stressed that it was the *custodial* nature of the interrogation which triggered the necessity for adherence to

---

**6.** During the questioning, the police told the petitioner that another suspect had been similarly interviewed in the station house earlier that day.

**7.** The petitioner asserts that the conduct of the police officers near the end of the session, by showing Mayfield a photograph of the victim's body, following him into the hallway and insinuating that it would not look good if he left the station house, rendered the interrogation custodial. The petitioner claims that the police vio-

lated his fifth amendment right against self-incrimination by failing to honor scrupulously his right to cut off questioning. The petitioner made his statement allegedly asserting his right to remain silent, however, well before the end of the interview. When Mayfield responded to the officer's inquiry regarding the identity of Vasquez with the statement, "No. I don't want to answer no question[s]," he clearly was not in custody.

the specific requirements of its *Miranda* holding." *Beckwith v. United States,* 425 U.S. 341, 346, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976) (emphasis in original) (citations omitted). "Although *Miranda*'s requirement of specific warnings creates a limited exception to the rule that the privilege [against self-incrimination] must be claimed, the exception does not apply outside the context of the inherently coercive custodial interrogations for which it was designed." *Roberts v. United States,* 445 U.S. 552, 560, 100 S.Ct. 1358, 1364, 63 L.Ed.2d 622 (1980).

The right to *Miranda* warnings was intended to counteract the coercion inherent in custodial arrest, which "is said to convey to the suspect a message that he has no choice but to submit to the officers' will and to confess," *Minnesota v. Murphy,* 465 U.S. 420, 433, 104 S.Ct. 1136, 1145, 79 L.Ed.2d 409 (1984) (citing *Miranda,* 384 U.S. at 456–57, 86 S.Ct. at 1618–19), *reh'g denied,* 466 U.S. 945, 104 S.Ct. 1932, 80 L.Ed.2d 477 (1984), and in custodial interrogation, which encompasses "an interrogator's insinuations that the interrogation will continue until a confession is obtained." *Id.* 465 U.S. at 433, 104 S.Ct. at 1145 (citing *Miranda,* 384 U.S. at 468, 86 S.Ct. at 1624). Neither of these conditions were present at the petitioner's August 9, 1983 interrogation. Mayfield was told that he did not have to be there and that he could leave at any time he wanted. Like individuals in custody, Mayfield was told that he had a right to remain silent. The reason that the petitioner's argument fails is that, unlike individuals in custody, Mayfield could end the interrogation and walk out the door at any moment he chose. As the Supreme Court has noted, "it seems self-evident that one who is told he is free to refuse to answer questions is in a curious posture to later complain that his answers were compelled." *United States v. Washington,* 431 U.S. 181, 188, 97 S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977).

The Court has also recognized that a noncustodial interrogation "might possibly in some situations, by virtue of some special circumstances, be characterized as one where 'the behavior of ... law enforce-ment officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined ...'" *Beckwith,* 425 U.S. at 347–48, 96 S.Ct. at 1617 (quoting *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961)). The trial judge found that the petitioner's statements and conduct at the interrogation were voluntary and that at no time was Mayfield's will or ability to refuse to answer questions overcome. The voluntariness of a confession, however, is not an issue of fact entitled to the presumption of correctness under 28 U.S.C. § 2254(d). *Miller v. Fenton,* 474 U.S. 104, 112–17, 106 S.Ct. 445, 450–53, 88 L.Ed.2d 405 (1985). While subsidiary factual questions do merit the § 2254(d) presumption, the ultimate determination of voluntariness is a legal issue demanding independent federal consideration in a habeas corpus proceeding. *Id.* at 112, 117, 106 S.Ct. at 450, 453; *accord Bryant v. Vose,* 785 F.2d 364, 367 (1st Cir.1986), *cert. denied,* 477 U.S. 907, 106 S.Ct. 3281, 91 L.Ed.2d 570 (1986), *reh'g denied,* 478 U.S. 1032, 107 S.Ct. 15, 92 L.Ed.2d 769 (1986).

■ That petitioner Mayfield received full *Miranda* warnings is a factor "quite relevant to a finding of voluntariness." *Frazier v. Cupp,* 394 U.S. 731, 739, 89 S.Ct. 1420, 1424, 22 L.Ed.2d 684 (1969) (citing *Davis v. North Carolina,* 384 U.S. 737, 740–41, 86 S.Ct. 1761, 1763–64, 16 L.Ed.2d 895 (1966)). While the police actions at the end of the session may have added an element of coercion to the interrogation, this court holds that under the totality of the circumstances the petitioner's will was not overborne. Moreover, there is nothing in the record to suggest that Mayfield failed to comprehend or was, in any way, unable to understand his situation and respond to that situation willingly and knowingly. Accordingly, I conclude that the petitioner's conduct and statements at the August 9, 1983 station house interview were "the product of a rational intellect and a free will," and that they were voluntarily given. *See Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963) (citations omitted); *cf. Mincey v.*

*Arizona,* 437 U.S. 385, 396–402, 98 S.Ct. 2408, 2415–19, 57 L.Ed.2d 290 (1978) (statements held involuntary where defendant was interrogated for nearly four hours while hospitalized in the intensive-care unit, barely conscious, unable to speak, encumbered by tubes, needles and a breathing apparatus, and despite his repeated requests to stop the questioning); *Davis,* 384 U.S. at 742–52, 86 S.Ct. at 1764–70 (statements held involuntary where defendant was held incommunicado in a lockup cell for sixteen days, fed an inadequate diet, and interrogated by police officers intermittently throughout each day until he confessed).

### B.

■ The petitioner next argues that his right to due process was violated by the exclusion of testimony which allegedly tended to incriminate the prosecution's only eyewitness to the murder, Kevin Gallagher. The trial judge did not allow the petitioner to present the testimony of Linda McDonald, a fourteen year old neighborhood girl. McDonald allegedly would have testified that either shortly before or after the victim's death she twice refused Gallagher's requests for a date, and he became angry and violent. According to McDonald, Gallagher on one occasion grabbed her arm while talking to her, causing her to bang her arm against a wall when she pulled away from him. On the second occasion, McDonald went inside a house after Gallagher had asked her for a date, whereupon Gallagher banged on the doorbell and screamed at McDonald to come outside. When McDonald returned and declined his invitation, Gallagher then punched and broke the doorbell. The petitioner offered this testimony to show Gallagher's propensity for violence and to imply that Gallagher, rather than Mayfield, may have killed

the victim.[8] The petitioner also proffered this testimony to impeach Gallagher's credibility because Gallagher testified at trial that the incidents had never occurred. The trial judge excluded McDonald's testimony, finding it inadmissible as being remote and irrelevant to the murder of the victim. Applying Massachusetts evidentiary case law, the SJC affirmed this ruling. *See Mayfield,* 398 Mass. at 628, 500 N.E.2d at 782. The petitioner contends that the exclusion of McDonald's testimony violated his due process right to present witnesses in his own defense, *see Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), and to defend himself by incriminating others. *See Chambers v. Mississippi,* 410 U.S. 284, 302–03, 93 S.Ct. 1038, 1049–50, 35 L.Ed.2d 297 (1973); *Pettijohn v. Hall,* 599 F.2d 476, 482–83 (1st Cir.1979), *cert. denied,* 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979).

The First Circuit has repeatedly made clear that "habeas review does not ordinarily extend to state court rulings on the admissibility of evidence." *Puleio v. Vose,* 830 F.2d 1197, 1204 (1st Cir.1987) (citing *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *Lisenba v. California,* 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941), *reh'g denied,* 315 U.S. 826, 62 S.Ct. 620, 86 L.Ed. 1222 (1942)), *cert. denied,* 485 U.S. 990, 108 S.Ct. 1297, 99 L.Ed.2d 506 (1988); *see also Salemme v. Ristaino,* 587 F.2d 81, 85 (1st Cir.1978). "The federal judiciary holds no roving commission to monitor case-by-case compliance with rules of evidence in the trial courts of the several states." *Puleio,* 830 F.2d at 1204; *see also Palmariello v. Superintendent of Massachusetts Correctional Institution—Norfolk,* 873 F.2d 491, 494 (1st Cir.1989) ("Habeas review does not ordinarily encompass garden-variety evidentiary rulings.") (citations omitted), *cert. de-*

8. The petitioner also alleges that other evidence existed which implied Gallagher's guilt and rendered McDonald's testimony sufficiently similar to the victim's murder to be admissible: that Gallagher admitted to being at the murder scene; that he allegedly kept a journal of "bizarre" and "disgusting" sexual acts with young girls; that the trial judge denied the petitioner's request during the second trial to compel Galla-

gher to give hair and blood samples; that scratches were seen on his arm shortly after the murder; that his hair appeared similar to the hair found on the victim; and that items found in the park near the victim's body, such as a Pepsi can, a pistachio nut bag and a cigarette carton, were allegedly of the type that Gallagher used. The respondent either denied or rebutted the bulk of this evidence at trial.

*nied,* —— U.S. ——, 110 S.Ct. 185, 107 L.Ed.2d 140 (1989).

While "[i]t is true that, ordinarily, issues concerning the admission of evidence ... present solely state law questions (which are not matters proper for a § 2254 petition) and are not of constitutional dimension," *Moran v. Vose,* 816 F.2d 35, 36 (1st Cir.1987) (per curiam) (citation omitted), "an evidentiary or other ruling so fundamentally unfair as to deny due process is an appropriate basis for habeas relief." *Id.* at 36. In order for an alleged state court evidentiary ruling error to violate due process, however, "such an error must 'so infuse the trial with inflammatory prejudice as to render a fair trial impossible.' " *Allen v. Snow,* 635 F.2d 12, 15 (1st Cir. 1980) (quoting *Salemme,* 587 F.2d at 85), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981).

The SJC determined that the trial judge's ruling was proper under state evidentiary precedent, and this court is "bound by the Massachusetts court's interpretation of state evidentiary law." *McLaughlin v. Vinzant,* 522 F.2d 448, 450 (1st Cir.1975), *cert. denied,* 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975), *reh'g denied,* 423 U.S. 1092, 96 S.Ct. 890, 47 L.Ed.2d 105 (1976). The fact that Mayfield was not allowed to show that Gallagher allegedly twice reacted violently when his requests for a date were rejected by McDonald did not violate "that fundamental fairness essential to the very concept of justice." *See Lisenba,* 314

U.S. at 236, 62 S.Ct. at 289. The trial judge's exclusion of McDonald's testimony, supported by Massachusetts evidentiary case law, "does not comprise proper grist for the federal habeas mill," *Puleio,* 830 F.2d at 1204, and is not a ruling which rises to the constitutional magnitude sufficient to warrant relief under § 2254.

### C.

The petitioner's third claim is that the trial judge violated his right to due process by giving the jury a supplemental instruction on reasonable doubt which prejudiced the petitioner by de-emphasizing the quantum of proof borne by the respondent in criminal actions.

During their deliberations, the jury requested written definitions of reasonable doubt and circumstantial evidence. Over the respondent's objections, the trial judge complied with this request. Before providing the written instructions, however, the trial judge cautioned the jury that they should not emphasize any particular portion of his charge, which took more than two hours to deliver. The judge noted that the written definitions were taken out of the context of the entire charge and that they should not serve to lessen the impact of any other instructions that were given. While the totality of the trial judge's cautionary warning is reprinted below, the petitioner objects primarily to the judge's statement, "I caution you not to focus in on any particular aspect of the charge." [9] The

---

9. The transcript reads:

"THE COURT: Mr. Foremen, and ladies and gentlemen, I requested the officers to bring you into court because I wanted to just add some words of caution concerning the documents that I have authorized you to have, mainly the definition of circumstantial evidence in my charge with reference to that limited item, and reasonable doubt. And I have concerns for the same reasons that I spoke to you about. I am going to provide them for you, but I have the concerns, and I would speak about emphasizing any particular phase of my charge. I want to remind you that that charge took over two hours and covered a wide field of consideration, and *I caution you not to focus in on any particular aspect of the charge,* because the whole thing was important. And I would point out that some of the things I talked to you about in that period of time, reviewing statements of counsel,

evaluating evidence and its admissibility for general or specific purposes, credibility of witnesses, inconsistencies, all kinds of considerations with reference to how you value witness's [sic] testimony and opinion evidence, and the qualifications of the experts, the presumption of innocence, Constitutional rights of the defendant, burden of proof on the Commonwealth, the Miranda warnings, confessions and admissions and statements of the defendant, statements of other witnesses, consciousness of guilt, conspiracy plan or in terms of a false alibi, alibi and so forth. The only reason, then, that I called this particular session is to remind you that in no way do I lessen the impact of anything else I've said when I make available to you the charges on circumstantial evidence and reasonable doubt. They're important, of course, or I wouldn't have charged you on them, but I don't intend to lessen in any way the impact of

trial judge denied the petitioner's request for a curative instruction, stating that his supplemental charge did not minimize the reasonable doubt standard or urge the jury not to focus on reasonable doubt.

■ Upon review, a challenged jury instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge," *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *accord Bumpus v. Gunter,* 635 F.2d 907, 911 (1st Cir.1980), *cert. denied,* 450 U.S. 1003, 101 S.Ct. 1714, 68 L.Ed.2d 207 (1981). "Moreover, in reviewing jury instructions, our task is also to view the charge itself as part of the whole trial." *United States v. Parks,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975); *accord United States v. Serino,* 835 F.2d 924, 930 (1st Cir.1987).

The Supreme Court has noted that "[t]he reasonable doubt standard plays a vital role in the American scheme of criminal procedure," *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), and the First Circuit has stated that "[d]iscussion of the [reasonable doubt] concept is perhaps that most important aspect of the closing instruction to the jury in a criminal trial." *Dunn v. Perrin,* 570 F.2d 21, 25 (1st Cir.1978) (citation omitted), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978). Nevertheless, an "undesirable, erroneous, or even 'universally condemned' " jury instruction shall not result in the overturning of a state court conviction unless the instruction "violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten,* 414 U.S. at 146, 94 S.Ct. at 400.

■ When analyzing state jury instructions on habeas review, federal courts "do not exercise supervisory power over the state courts of Massachusetts; our review of their criminal proceedings is limited to those instances in which 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Grace v. Butterworth,* 635 F.2d 1, 6 (1st Cir.1980) (quoting *Cupp v. Naughten,* 414 U.S. at 147, 94 S.Ct. at 400), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981). Since "[i]nstructions in a state trial are a matter of state law to which substantial deference is owed," *Niziolek v. Ashe,* 694 F.2d 282, 290 (1st Cir.1982), "[a]s a general rule, improper jury instructions will not form the basis for federal habeas corpus relief." *Id.* at 290 (citation omitted).

■ Petitioner Mayfield's claim encompasses only the cautionary warning which the trial judge gave in response to the jury's request for a written reasonable doubt instruction; the petitioner does not challenge the substance of the reasonable doubt definition itself. *Cf. United States v. Campbell,* 874 F.2d 838, 841–45 (1st Cir. 1989) (holding that the district court's reasonable doubt jury instruction did not constitute plain error); *Lanigan v. Maloney,* 853 F.2d 40, 45–50 (1st Cir.1988) (granting habeas corpus relief where the state trial judge's reasonable doubt jury instruction was constitutionally defective), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). Despite the petitioner's assertion to the contrary, the trial judge here did *not* tell the jury not to focus upon reasonable doubt. Instead, the trial judge simply cautioned the jury "not to focus in on any particular aspect of the charge, because the whole thing was important." This is a proper limiting instruction, since "[a] reasonable juror can be expected to listen to all he/she is told by the judge and it will be presumed that he/she will not isolate a particular portion of the charge and ascribe to it more importance than the rest." *McInerney v. Berman,* 621 F.2d 20, 24 (1st Cir.1980), *cert. denied,* 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 85 (1980). As the SJC noted, by providing the jury with supplemental written copies of an accepted definition of reasonable doubt, the trial judge "hardly trivialized" the importance of the reasonable doubt instruction. *May-*

everything else I've said in the charge, because its [sic] very essential that all of those matters be covered. These items, in effect, are taken out of context, and I want you to be aware and consider that as you view and consider those particular aspects which you have requested."

**1160**

*field*, 398 Mass. at 630, 500 N.E.2d at 783. Taken in the context of the entire charge, the state court's cautionary instruction did not so infect Mayfield's trial "as to cause the jury to evaluate petitioner's guilt or innocence under a standard less than 'beyond a reasonable doubt,'" *Bumpus*, 635 F.2d at 909, nor did it have a "sufficiently devastating impact on the trial to amount to a denial of due process." *Grace*, 635 F.2d at 6.

### D.

The fourth and final argument that the petitioner presents is that his retrial in state court on the first degree murder indictment violated his right against double jeopardy.

Petitioner Mayfield was originally tried on charges of rape and first degree murder in Suffolk Superior Court. The jury began deliberations on April 20, 1984 and returned a not guilty verdict on the rape indictment on April 23, 1984. At that time, the foreman informed the trial judge that the jury had not reached a verdict on the murder indictment. Later that day, the jury submitted a written note, signed by the foreman, stating that there were ten jurors for guilty and two for not guilty on the murder charge. The judge suspended deliberations for the day. After receiving proper supplemental instructions from the trial judge, the jury reconvened on April 24, 1984. At 11:35 a.m., the foreman submitted the second note to the court, indicating that "[t]he last jury vote was eleven to one guilty" on the first degree murder indictment and that the lone juror had "stated emphatically that his mind [was] made up." The trial judge instructed the jurors to continue their deliberations until they received further orders from the court. At 2:30 p.m., the foreman submitted the third and final note, declaring that all members of the jury were "completely convinced" that the lone vote for acquittal could not be swayed and that the jury could not reach a unanimous verdict on the mur-

der indictment. The petitioner immediately proffered a motion for a mistrial, which the trial judge initially denied. After exhausting all possible alternatives with counsel, however, the court decided to declare a mistrial.

When the trial judge asked the foreman in open court if a verdict on the murder indictment had been reached, the foreman replied that it had not. The trial judge did not request, and the foreman did not volunteer, any additional information concerning the particulars of the jury deliberations.[10] Counsel for the petitioner submitted an affidavit subsequent to trial in which he stated that he had contacted one juror who told him that the jury vote was eleven to one guilty for second degree murder. The petitioner contends that this jury deadlock on second degree murder implicitly acquitted Mayfield of the first degree murder charge. The petitioner asserts that his retrial on the first degree murder indictment in Middlesex Superior Court violated his protection against double jeopardy.

The fifth amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The double jeopardy protection "was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). This principle prevents the state "with all its resources and power" from repeatedly prosecuting an individual and "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Id*. at 187–88, 78 S.Ct. at 223.

Although the right against double jeopardy "is deeply ingrained in ... the

---

**10.** The record does not appear to indicate that either party requested the trial judge to inquire further about the status of the jury deliberations on lesser included offenses within the first de-

gree murder indictment. Furthermore, neither the petitioner nor the respondent makes this assertion in their appellate briefs.

Anglo–American system of jurisprudence," *id.* at 187, 78 S.Ct. at 223, it "does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment." *Wade v. Hunter*, 336 U.S. 684, 688, 69 S.Ct. 834, 836, 93 L.Ed. 974 (1949), *reh'g denied*, 337 U.S. 921, 69 S.Ct. 1152, 93 L.Ed. 1730 (1949). More than 165 years ago, the Supreme Court declared that a trial judge has the authority and discretion to discharge a hung jury without implicating the double jeopardy bar to future prosecution, since a deadlocked jury constitutes a "manifest necessity" for mistrial. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). The Court recently reaffirmed *Perez*, recognizing that "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy," *Richardson v. United States*, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984) (citations omitted), and holding that "the failure of the jury to reach a verdict is not an event which terminates jeopardy." *Id.* at 325, 104 S.Ct. at 3086; *accord United States v. Reis*, 788 F.2d 54, 56 (1st Cir.1986). The *Richardson* court noted that "[t]he Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree." *Id.* 468 U.S. at 326, 104 S.Ct. at 3086.

■ At Mayfield's first trial, the jury did not return a unanimous verdict to the judge in open court as is required by Fed. R.Crim.P. 31(a). The trial judge was under no duty to inquire about the status of the jury's deliberations regarding any lesser included offense within the first degree murder indictment. *See Doe v. Donovan*, 747 F.2d 42, 44 n. 1 (1st Cir.1984) (leaving undecided the issue of whether the double jeopardy clause prohibits declaration of a mistrial without first asking the jury if it has reached a verdict on any lesser included offense).[11] Furthermore, a trial judge

has broad discretion in determining whether a manifest necessity exists in order to justify the discharge of a jury, and reviewing courts must afford a trial judge's decision to consider a jury deadlocked and declare a mistrial great deference. *See Arizona v. Washington*, 434 U.S. 497, 509–10, 98 S.Ct. 824, 832–33, 54 L.Ed.2d 717 (1978); *accord Doe v. Donovan*, 747 F.2d at 45. Since a genuinely deadlocked jury is the "classic basis," *Arizona v. Washington*, 434 U.S. at 509, 98 S.Ct. at 832, and "prototypical example," *Oregon v. Kennedy*, 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982), of a manifest necessity for mistrial, the petitioner has no valid double jeopardy claim to render his subsequent retrial on the first degree murder indictment unconstitutional. *See Richardson*, 468 U.S. at 326, 104 S.Ct. at 3086.

### III.

For the reasons set forth above, the petitioner's request for a writ of habeas corpus is denied.

SO ORDERED.

### ORDER OF DISMISSAL

In accordance with the Memorandum and Order issued this date, denying petitioner's Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus, it is hereby ORDERED that the above-entitled action be and hereby is dismissed.

---

**11.** The SJC has held that a trial judge is under no obligation to inquire as to the status of a hung jury's deliberations on any lesser included

charges within an indictment. *See A Juvenile v. Commonwealth*, 392 Mass. 52, 55, 465 N.E.2d 240, 243 (1984).